**BOARD OF REGENTS OF the UNIVERSITY OF MINNESOTA, et al., Respondents,**

v.

**ROYAL INSURANCE COMPANY OF AMERICA, Appellant (C1–93–24), Defendant (C8–93–36, C5–93–186),**

**Great American Insurance Company, Defendant (C1–93–24, C8–93–36), Appellant (C5–93–186),**

**North River Insurance Company, et al., Defendants (C1–93–24, C8–93–186), Appellants (C8–93–36).**

**Nos. C1–93–24, C8–93–36 and C5–93–186.**

Court of Appeals of Minnesota.

July 6, 1993.

Review Granted Aug. 16, 1993.

488

Board of Regents of the University of Minnesota, et al.

Austin D. Ditzler, Minneapolis, for Royal Ins. Co. of America.

Stephen J. Foley, Foley & Mansfield, Minneapolis, for Great American Ins. Co.

Andrew W. Horstman, Robins, Kaplan, Miller & Ciresi, Minneapolis, for North River Ins. Co., et al.

Considered and decided by RANDALL, P.J., and SHORT and AMUNDSON, JJ.

## OPINION

RANDALL, Judge.

The Board of Regents of the University of Minnesota (the regents) commenced an action against Asbestospray Corporation seeking damages associated with the abatement of asbestos-containing insulation in various buildings in the University of Minnesota and State University System. The complaint was subsequently amended to name H & A Construction, formerly known as Spraycraft Corporation, as a defendant. Before trial of the matter was completed, the parties entered into a *Miller–Shugart* settlement.

The regents then brought the present action to enforce the settlement against the insurance companies who denied coverage on several grounds. On cross-motions for summary judgment, the trial court granted the regents summary judgment, and the insurers have appealed. We affirm in part and reverse in part.

## FACTS

Asbestos Products Manufacturing Corporation (APM) was incorporated in New York in 1946. Asbestospray Corporation, incorporated in New York in 1948, distributed the products manufactured by APM. These products included sprayable asbestos fireproofing and insulation materials.

In 1972, H & A Construction Corporation, formerly known as Spraycraft Corporation, purchased the assets and assumed the liabilities of Asbestospray Corporation. Spraycraft and H & A were both New York corporations.

Michael R. Strom, Sieben, Polk, LaVerdiere, Jones & Hawn, P.A., Hastings, for

Between 1970 and 1972, insulation that contained asbestos was installed in various buildings at the University of Minnesota–Twin Cities campus, the University of Minnesota–Morris campus, and Bemidji State University. In March 1985, the regents commenced a product liability action against numerous asbestos product manufacturers, contractors, and miners. The cost of cleanup and changeover is enormous. Asbestospray was one of the defendants in the action. Subsequently, the complaint was amended to name H & A Construction as a defendant.

Trial of the regents' action commenced in February 1989. Before completion of the trial, Asbestospray and H & A settled the claims against them on a *Miller–Shugart* [1] basis. The regents then commenced the present action, seeking to recover the available insurance proceeds pursuant to the *Miller–Shugart* judgment.

The parties brought cross-motions for summary judgment. In moving for summary judgment, the insurers asserted New York law, rather than Minnesota law, should be applied.

The trial court granted summary judgment to the regents, finding the policies at issue provided coverage for the claims brought by the regents. The trial court declared the insurers liable to the regents, jointly and severally, for the full amount of the *Miller–Shugart* settlement. The insurers have filed three separate appeals, which have been consolidated. [2]

## ISSUES

1. Did the trial court err by granting summary judgment as to the existence of the Royal policy?

2. Did the trial court err by finding successor liability on the part of Spraycraft and H & A Construction?

3. Did the trial court err by concluding coverage was not barred by any of the named exclusions?

4. Did the trial court err by finding an occurrence resulting in property damage during the relevant policy periods?

5. Did the trial court err by applying Minnesota law?

6. Did the trial court err by finding the *Miller–Shugart* settlement reasonable?

7. Did the trial court err by finding the settlement did not render coverage void?

## ANALYSIS

The trial court granted the regents' motion for summary judgment on all grounds. Summary judgment is appropriate when there is no genuine issue as to any material fact and a party is entitled to a judgment as a matter of law. Minn. R.Civ.P. 56.03. On review of a summary judgment, this court must determine whether there are any genuine issues of material fact and whether the trial court correctly applied the law. *Offerdahl v. University of Minn. Hosps. & Clinics*, 426 N.W.2d 425, 427 (Minn.1988). The facts must be viewed in the light most favorable to the party against whom summary judgment was granted. *Grondahl v. Bulluck*, 318 N.W.2d 240, 242 (Minn.1982).

In their appeals, the insurers have raised numerous issues and sub-issues; these have been condensed in this opinion. The parties have thoroughly briefed each issue raised. We conclude that under Minnesota law, the pollution exclusion clause is dispositive. Therefore, we address only that clause [3] and choice of law.

1. *See Miller v. Shugart,* 316 N.W.2d 729 (Minn. 1982).

2. In its appeal, Great American challenges only the trial court's holding that it is jointly and severally liable for the entire amount of the settlement judgment. Although the order for judgment states the insurers are jointly and severally liable, the trial court's memorandum states the insurers are liable only "up' to the available limits of the affected insurance policies." The regents do not oppose clarification

that the insurers are not obligated to pay any amounts beyond their policy limits.

3. The various policies included the following clauses, which, if applicable, would bar coverage:

 A. Pollution exclusion
 B. Business risk exclusion
 C. Sistership exclusion
 D. Performance exclusion
 E. Repair and replacement exclusion

## Choice of Law

■ The insurers contend the trial court erred in applying Minnesota, rather than New York, law. In analyzing a choice of law issue, the court must first determine whether there are sufficient contacts with the State of Minnesota to make application of Minnesota's law consistent with the requirements of due process. *See Hime v. State Farm Fire & Cas. Co.*, 284 N.W.2d 829, 832 (Minn.1979), *cert. denied*, 444 U.S. 1032, 100 S.Ct. 703, 62 L.Ed.2d 668 (1980). In this case, the asbestos was applied in Minnesota to a building owned by the State of Minnesota. There is no due process problem in applying Minnesota law.

■ To resolve a choice-of-law issue, the court must apply the five factors set forth in *Milkovich v. Saari*, 295 Minn. 155, 203 N.W.2d 408 (1973). Those considerations are: (1) predictability of result; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interest; and (5) application of the better rule of law. *Id.* at 161, 203 N.W.2d at 412.

■ Before applying the five factors of *Milkovich*, the court must first determine whether the choice of one state's law will be "outcome determinative," that is, whether there is an actual conflict. *Myers v. Government Employees Ins. Co.*, 302 Minn. 359, 363, 225 N.W.2d 238, 241 (1974). Our conclusion that the pollution exclusion clauses bar coverage for the regents' claims is contrary to New York law. *See Continental Cas. Co. v. Rapid–American Corp.*, 80 N.Y.2d 640, 593 N.Y.S.2d 966, 609 N.E.2d 506 (1993) (pollution exclusion clause inapplicable to claims alleging bodily injury caused by exposure to asbestos). Therefore, we must address the choice-of-law issue.

### A. Predictability of Result

■ This case involves the interpretation of insurance policies issued to New York corporations and obtained in New York through a New York agent. However, the companies did business in all 50 states, a fact of which the insurers must have been aware. *See Hague v. Allstate Ins. Co.*, 289 N.W.2d 43, 48 (Minn.1978), *aff'd*, 449 U.S. 302, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981). The insurers' coverage followed the insured's products into all 50 states, making it predictable that the insured would be sued throughout the country, not only in New York. *See United States Fire Ins. Co. v. Goodyear Tire & Rubber Co.*, 726 F.Supp. 740, 744 (D.Minn.1989), *aff'd*, 920 F.2d 487 (8th Cir.1990).

### B. Maintenance of Interstate Order

■ This consideration requires that the state whose laws are ultimately applied have sufficient contacts with the litigation to meet the requirements of due process. *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 313, 101 S.Ct. 633, 640, 66 L.Ed.2d 521 (1981). We find both New York and Minnesota have sufficient contacts with the present litigation to support application of either state's law.

### C. Simplification of the Judicial Task

Most courts that have considered this factor have treated it summarily, stating that they are perfectly able to apply the law of either proposed jurisdiction. *See Goodyear*, 726 F.Supp. at 744–45; *Hague*, 289 N.W.2d at 49. In the present case, however, there is an additional factor to consider. The Minnesota Supreme Court, in orders of December 14, 1987 and October 27, 1988, has ordered that all "asbestos-related claims brought in Minnesota state courts" be heard and decided by a single judge. The supreme court has found that this system "has proven to be effective in providing a consistent, efficient and economical system for managing all phases of this litigation." It would be consistent with the supreme court's orders to apply a consistent body of law, i.e. Minnesota law, to all Minnesota asbestos-related claims brought before the judge assigned to hear those claims. *See In re Minnesota Personal Injury Asbestos Cases*, 481 N.W.2d 24 (Minn.1992).

### D. Advancement of the Forum's Governmental Interest

■ This factor is intended to assure that Minnesota courts are not called upon

to apply rules of law inconsistent with Minnesota's concept of fairness and equity. *Hime,* 284 N.W.2d at 833. In considering this factor, it may be necessary to take into account the public policy of the other state. *See Gate City Fed. Sav. & Loan Ass'n v. O'Connor,* 410 N.W.2d 448, 451 (Minn.App. 1987), *pet. for rev. denied* (Minn. Oct. 21, 1987).

### E. Better Rule of Law

■ This factor applies only when the first four factors do not clearly resolve the choice of law issue. *Myers,* 302 Minn. at 368, 225 N.W.2d at 244. Although there may be a tendency by the courts of a state to consider its law the "better" law, this court has shown it is capable of declaring the law of a foreign state "better." *See Gate City,* 410 N.W.2d at 451 (declaring North Dakota anti-deficiency statute better than Minnesota law). Given all of the factors of *Milkovich,* particularly simplification of the judicial task, we hold the trial court correctly applied Minnesota law.

### The Pollution Exclusions

Insurers began to put pollution exclusion clauses in commercial general liability policies in the early 1970s, in an attempt to limit coverage of pollution-related losses. E. Joshua Rosenkranz, Note, *The Pollution Exclusion Clause through the Looking Glass,* 74 Geo.L.J. 1237, 1251 (1986).

■ Although there are others, we find the following two pollution exclusions dispositive.[4] The primary policies exclude coverage for:

> Bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, *contaminants or pollutants into* or upon land, *the atmosphere* or any water course or body of water; but this *exclusion does not apply if* such *discharge,*

dispersal, release or escape *is sudden and accidental.*

(Emphasis added.)

■ This court has held that the "sudden and accidental" exception to the pollution exclusion is unambiguous and that "sudden" has a temporal connotation. *Sylvester Bros. Dev. Co. v. Great Cent. Ins. Co.,* 480 N.W.2d 368, 376 (Minn.App.1992), *pet. for rev. denied* (Minn. Mar. 26, 1992). The complaints state that the damage to the buildings was the result of gradual and continuous deterioration of the asbestos-containing materials, resulting in a constant emission of asbestos fibers into the buildings. Since the buildings were constructed between 1970 and 1972, the complaint alleges that the discharge has been going on for 21 to 23 years. This cannot reasonably be construed to be "sudden."

The regents contend the primary policies' pollution exclusion is inapplicable to this case, relying on *Grinnell Mut. Reins. Co. v. Wasmuth,* 432 N.W.2d 495 (Minn.App. 1988), *pet. for rev. denied* (Minn. Feb. 10, 1989). We disagree. As the court noted in *Sylvester Bros.,*

> The [insured] contends our decision in *[Grinnell]* requires a finding that the "sudden and accidental" exception is ambiguous. We disagree. The principal basis for our decision in *Grinnell* was the "reasonable expectations" doctrine. This court repeatedly emphasized the unique facts in *Grinnell* as being the basis for its conclusion. Rather than support a finding of ambiguity, *Grinnell* supports our conclusion that "sudden and accidental" is unambiguous because this is precisely the type of "typical" pollution case in which *Grinnell* found the scope of the pollution exclusion clause to be unambiguous.

*Sylvester Bros.,* 480 N.W.2d at 376 (citations omitted).

For the same reason *Grinnell* did not control *Sylvester Brothers,* it is not applicable here. The insured in *Grinnell* was a small business (a home insulation contrac-

---

**4.** Great American did not challenge the trial court's holding that its pollution exclusion clause did not bar coverage; therefore, Great American is bound by the trial court's decision. *See Lener v. St. Paul Fire & Marine Ins. Co.,* 263 N.W.2d 389, 390 (Minn.1978).

tor) that was sued when foam insulation, deteriorating because of improper installation, released formaldehyde inside a home. *Grinnell,* 432 N.W.2d at 497. The *Grinnell* court, after "[c]onsidering the nature and purpose of the pollution exclusion," deemed *Grinnell* "the unusual case requiring application of [the reasonable expectations doctrine.]" *Id.* at 499.

This case, by comparison, involves a manufacturer and distributor of a hazardous product, a typical case. The insureds were large corporations doing business throughout the country, and no part of the setting for this lawsuit is unique.

■ The pollution exclusion clause is not limited to the classic polluter, heavy industry's smokestacks, runoffs et cetera. By its plain terms, the clause covers "irritants, contaminants or pollutants." Whether something is a pollutant may depend on whether it is where it is not supposed to be. *See Weber v. IMT Ins. Co.,* 462 N.W.2d 283, 286 (Iowa 1990) (hog manure a "pollutant" when spilled on a road). Here, asbestos is a pollutant. It has come loose and made the buildings in which it was installed unsafe.

■ The regents also argue release of asbestos inside a building is not a discharge into the "atmosphere," [5] and therefore their claim is not barred by policy exclusion. We disagree. A claimed distinction between air inside a building and "atmosphere" is artificial. Buildings have doors, windows, vents, and are not vacuum sealed (particularly a state university with thousands of students and university personnel going in and out of the buildings daily). Air inside a building comes in from the outside. Air inside a building mingles with and becomes part of the air outside. If it is improper to discharge, disperse, or release smoke, vapors, fumes, gases, contaminates, or pollutants into the air/atmo-

sphere when the incinerator/garbage burner has an outside chimney, it does not seem reasonable the problem can be cured by moving the source of release into a building and then starting the discharge. Smoke, vapors, fumes, et cetera, when released inside a building (absent quantities so minute that they can be captured or their release considered de minimis) get outside. In fact, the hazard to be guarded against, the discharge of these pollutants in the proximity of human beings, is apt to be as great inside a building as outside. Common sense tells us that the hazard from a waste dump emitting noxious smoke is not cured by lighting the fire inside a building. We cannot read into the policy exclusion at issue a footnote that states "this exclusion only applies to asbestos wrapped pipes that are not under a ceiling."

■ In addition to the primary policies' pollution exclusions, the excess policies issued by U.S. Fire and North River bar coverage

for *contamination* or pollution *of* land, water, air or *real or personal property* or any injuries or damages resulting therefrom caused by an occurrence.

(Emphasis added.) The policies define "occurrence" to mean

a continuous or repeated exposure to conditions which unexpectedly and unintentionally causes injury to persons or tangible property during the policy period.

These exclusions apply and unambiguously bar coverage for the claim that asbestos contamination has caused property damage to the buildings.

## DECISION

The trial court correctly applied Minnesota law. Under Minnesota law, the pollution

---

5. This argument was accepted by the New York Court of Appeals in *Rapid–American* as one basis for finding the pollution exclusion clause inapplicable. The court in that case stated:

[T]he three places for discharge contemplated by the policy exclusion—into or upon land, the atmosphere, or any water course or body of water—read together support the conclu-

sion that the clause was meant to deal with broadly dispersed environmental pollution * * * not the possibly confined environs of the present complaints. The crucial distinction, therefore, is * * * whether asbestos was placed into the environment.
*Rapid–American,* 593 N.Y.S.2d at 973, 609 N.E.2d at 513 (citations omitted).

exclusions of the Royal, North River and U.S. Fire policies bar coverage for the regents' claims.

**Affirmed in part, reversed in part.**