**MEDTRONIC, INC., Respondent,**

v.

**ADVANCED BIONICS CORPORATION, et al., Appellants.**

**Nos. C0–00–1461, C8–00–1563.**

Court of Appeals of Minnesota.

June 26, 2001.

William Z. Pentelovitch, Richard G. Wilson, Wayne S. Moskowitz, Maslon Edelman Borman & Brand, LLP, Minneapolis (for respondent).

Michael A. Lindsay, Mitchell Granberg, Dorsey & Whitney, LLP, Minneapolis, and Michael J. Weber, Feldman, Gale & Weber, P.A., Miami Center, Miami, FL (for appellants).

Considered and decided by WILLIS, Presiding Judge, ANDERSON and FOLEY, Judges.

## OPINION

DANIEL F. FOLEY, Judge *

This case arises out of a noncompete agreement between appellant Mark Stultz and respondent Medtronic, Inc., his former employer. Stultz's new employer, appellant Advanced Bionics Corporation, and Stultz brought a complaint in California Superior Court challenging the agreement, and Medtronic brought a complaint in

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

Minnesota district court seeking enforcement. This is a consolidated appeal from several orders for temporary injunctions. Advanced Bionics and Stultz challenge the injunction order and the exercise of jurisdiction by Minnesota. Because we agree with the district court's determination that Minnesota law applies to this dispute and that Minnesota has jurisdiction to issue temporary injunctive relief to enforce the limited noncompete agreement, we affirm.

## FACTS

Medtronic is a Minnesota-headquartered medical technology corporation, which currently markets an implantable neurostimulator device designed to relieve chronic pain caused by neurological diseases. Advanced Bionics, a California-headquartered corporation, manufactures implantable neurostimulation devices to treat deafness and expects to have a pain neurostimulator, similar to Medtronic's device, on the market within two years. Both corporations conduct business nationwide.

In 1995, Mark Stultz began working for Medtronic in the management and marketing of spinal-cord stimulation products. Stultz was eventually promoted to product manager of the neurostimulation—pain division. When he began his employment with Medtronic, Stultz signed an employment contract containing a noncompete clause, which states, in part, that

> for two (2) years after termination of employment he/she will not directly or indirectly render services (including services in research) to any person or entity in connection with the design, development, manufacture, marketing, or sale of a Competitive Product that is sold or intended for use or sale in any geo-

graphic area in which Medtronic actively markets a Medtronic Product or intends to actively market a Medtronic Product of the same general type or function * * *.

The agreement also included a choice-of-laws provision, which stated:

> The validity, enforceability, construction and interpretation of this Agreement shall be governed by the laws of the state in which the Employee was last employed by Medtronic.

On June 5, 2000, Stultz signed an offer of employment with Advanced Bionics. Two days later, Stultz resigned from his employment with Medtronic, and Advanced Bionics filed a motion for declaratory and injunctive relief in California Superior Court. The complaint stated: "Stultz is the Director of SCS Business Development at Advanced Bionics, and works at [its] facilities in Sylmar, California." In fact, Stultz had not yet moved to California.

On June 8, Advanced Bionics filed an ex parte application in California for a temporary restraining order (TRO) to prevent Medtronic from "taking any action, other than in this court, to enforce its non-competition agreement with Mr. Stultz." In support of the motion, Stultz filed a declaration stating his intent to work and live in California. It was allegedly signed on June 7.[1] A hearing was scheduled for the next day.

On June 9, Medtronic removed the California action to federal court based on diversity. On the same day, Medtronic filed a motion in Hennepin County District Court for a TRO to prevent Advanced Bionics from taking action to interfere

---

1. Medtronic complains that Stultz declared that he executed this document on June 7, 2000, the same day he resigned from his position in Minnesota. But he later amended his statement, and moreover, this disagreement is irrelevant to the issues before this court.

with the jurisdiction of the Minnesota court and from employing Stultz. The TRO was granted.

Advanced Bionics filed an amended complaint in California stating that Stultz was a Minnesota resident who intended to relocate to California. Because Stultz and Medtronic both resided in Minnesota, complete diversity was lacking. On June 16, the California federal court remanded the case to California Superior Court for lack of subject matter jurisdiction. The court found that Medtronic knew Stultz was a Minnesota resident and had violated its obligation to "reasonably investigate the facts before filing a notice of removal," but deleted a reference to "bad faith" removal that Advanced Bionics had included in the proposed order.

The California Superior Court denied Medtronic's motion to stay or dismiss pending a decision on the merits in Minnesota finding that the "interests of substantial justice will not be served by staying or dismissing this action." The California court retained jurisdiction over the case and held that Medtronic's assertion that Stultz's employment with Advanced Bionics and the use of the experience and the knowledge he gained at Medtronic would violate the noncompete agreement was "insufficient as a matter of [California] law."

On August 3, the Hennepin County District Court issued a temporary injunction prohibiting Advanced Bionics from interfering with the noncompete agreement between Stultz and Medtronic and barring Stultz from "providing service or assistance" to Advanced Bionics in connection with any spinal-cord stimulation device. The court analyzed the case under the factors set forth in *Dahlberg Bros. v. Ford Motor Co.*, 272 Minn. 264, 274–75, 137 N.W.2d 314, 321–22 (1965). But the August 3 temporary injunction, unlike the June 9 TRO, did not include language restraining Advanced Bionics from pursuing the litigation pending in California.

On August 8, Advanced Bionics obtained an ex parte TRO in California enjoining Medtronic from participating in or taking any action in any court other than the California Superior Court to enforce the noncompete agreement against Stultz or to otherwise restrain Stultz from working for Advanced Bionics in California. This order prohibited Medtronic from taking any action in the Minnesota case. Medtronic sent a letter to the Minnesota court, informing it of the August 8 California TRO and asking for "guidance" as to how to proceed in view of the restrictions laid down by the California court.

On August 16, the Minnesota court amended its August 3 order nunc pro tunc, enjoining Advanced Bionics from seeking relief from any other court that would "restrict Medtronic from prosecuting its claims." The order noted that the June 9 TRO issued in Minnesota had contained this prohibition and the "failure to incorporate such language in [the August 3 temporary injunction] was a clerical error." The court further ordered Advanced Bionics to move to vacate or rescind the August 8 California TRO. In its findings of fact, the court noted that the California court had based its decision to grant relief at least in part on the fact that the California case was filed two days before the Minnesota action. But the district court found that Advanced Bionics had not made the "first-filed" argument in Minnesota. The court held that California does not have a "materially greater interest" in this case and that Minnesota law should apply.

On August 21, Advanced Bionics moved ex parte in California Superior Court to sanction Medtronic for writing the August 11 letter to the Minnesota court and for a permanent injunction against Medtronic. Advanced Bionics orally informed the Cali-

fornia court of the Minnesota court's directive that Advanced Bionics seek to vacate the August 8 TRO. The California court denied the motions in totality.

On August 22, Advanced Bionics appealed to this court from the August 3 and 16 temporary injunction. Advanced Bionics also moved the district court for a stay of the nunc pro tunc order prohibiting Advanced Bionics from seeking relief from any other court or in any way seeking to limit the right of Medtronic to prosecute its claims.

On August 22, the district court in Minnesota held a pretrial conference. The court expressed its displeasure with Advanced Bionics's counsel, who failed to inform the court until that day that Medtronic's counsel had been enjoined by the California court from appearing. The court indicated that although Medtronic had written a letter advising of the August 9 ex parte TRO, the August 16 amendment nunc pro tunc was not in response to that letter, but rather on the court's own initiative. On August 25, the district court in Minnesota heard arguments from Advanced Bionics on the motion for a stay pending appeal. The court denied a stay pending this appeal and further amended the August 3 temporary injunction to preclude Advanced Bionics from seeking any "permanent" relief in California. Advanced Bionics then filed a second appeal, and we consolidated the appeals.[2] On September 12, the California court amended the August 8 TRO to permit Medtronic to participate in this appeal.[3]

**ISSUES**

1. Did the district court err in failing to defer any ruling on a temporary injunction motion because related litigation was filed first in California?

2. Based on the doctrine of unclean hands, did the district court err in granting equitable relief to a party that "improperly" sought removal of related litigation in California?

3. Did the district court err in issuing the temporary injunction?

**ANALYSIS**

■  As a preliminary matter we address Advanced Bionics's concerns regarding the Minnesota district court's nunc pro tunc orders of August 16 and 25. Advanced Bionics argues that the orders are improper sua sponte amendments. But we find the nunc pro tunc orders proper under Minn.R.Civ.P. 60.01.

■  Minn.R.Civ.P. 60.01 allows clerical errors "arising from oversight or omission" to be corrected "by the court at any time upon its own initiative * * * after such notice, if any, as the court orders." The Minnesota Supreme Court has described a "clerical mistake" as follows:

> Such a mistake ordinarily is apparent upon the face of the record and capable of being corrected by reference to the record only. It is usually a mistake in the clerical work of transcribing the particular record. It is usually one of form. It may be made by a clerk, by counsel, or by the court.

*Wilson v. City of Fergus Falls*, 181 Minn. 329, 332, 232 N.W. 322, 323 (1930); *see*

---

**2.** The parties have made various cross-motions regarding the contents of the record. We have limited our review to the papers actually filed in the district court prior to issuance of the decisions from which these appeals are taken and to relevant rulings and decisions available to the public. The parties' motions are denied.

**3.** On March 22, 2001, the California Court of Appeals affirmed the restraining order of the California Superior Court.

also *Gould v. Johnson*, 379 N.W.2d 643, 646–47 (Minn.App.1986) (applying *Wilson* definition in construing Minn.R.Civ.P. 60.01), *review denied* (Minn. Mar. 14, 1986). A nunc pro tunc order is "permitted to correct the record and in furtherance of justice." *Hampshire Arms Hotel Co. v. Wells*, 210 Minn. 286, 288, 298 N.W. 452, 453 (1941).

On August 16, the Minnesota court amended the August 3 order nunc pro tunc to include language enjoining Advanced Bionics and Stultz from seeking injunctive relief in the California action. This language had been in the TRO but had not been included in the August 3 temporary injunction. The court emphasized that the failure to include this language was a clerical error. On August 25, the court amended the August 16 order to further enjoin Advanced Bionics and Stultz from seeking any permanent relief in California to restrain Medtronic's action in Minnesota. Again, this relief was granted in the TRO but omitted from later orders.

■ Advanced Bionics argues that the changes "exacerbated the conflicts" between the Minnesota and California courts and are improper because they affect the California court, a third person not party to the action. But this argument is without merit. Although the restrictions may affect the California court, they are placed on the party to the litigation and not the court. "It has long been the law in Minnesota that a court can enjoin a party over whom it has in personam jurisdiction from proceeding with litigation before another court." *St. Paul Surplus Lines Ins. Co. v. Mentor Corp.*, 503 N.W.2d 511, 516 (Minn. App.1993) (citing *State ex rel. Bossung v. District Court*, 140 Minn. 494, 498, 168 N.W. 589, 590–91 (1918)). There is nothing improper about this relief.

■ Advanced Bionics also argues that the orders do not comport with due process because there was no motion before the court and it was given no notice or opportunity to respond. But the rule renders these arguments inapplicable. Under Minn.R.Civ.P. 60.01, a court may, on "its own initiative" and without notice, correct a clerical error.

Additionally, Advanced Bionics has not explained any reason that the omissions made in the temporary injunction of language that had been part of the TRO were anything other than clerical errors. Moreover, there is nothing in the record demonstrating an intention of the court to grant Medtronic a temporary injunction with relief that differed from the TRO. We conclude that the district court's clarification of the order was an oversight "apparent on the face of the record," and, as such, is an error that is correctable by the court nunc pro tunc under rule 60.01. *See Rogers v. Moore*, 603 N.W.2d 650, 656 (Minn.1999) (holding that even significant errors, if clerical in nature, may be corrected by the district court nunc pro tunc).

### I. First–Filed Rule

Advanced Bionics argues that the district court erred in failing to apply the first-filed rule.[4]

■ The first-filed rule provides that where two courts have concurrent jurisdic-

---

4. Advanced Bionics asserts that the district court did not address the first-filed rule, but this assertion is erroneous. Although not included in a written order, the court ruled that the

"first-filed rule" would not apply to prevent Medtronic from carrying on this action sim-

ply because any or all provisions that ordinarily would prevent a second filing from proceeding did not occur in this case.

The district court both addressed and rejected Advanced Bionics' argument regarding the first-filed rule.

tion, the first to acquire jurisdiction generally has priority to decide the case. *Minnesota Mut. Life Ins. v. Anderson*, 410 N.W.2d 80, 82 (Minn.App.1987). This rule "is not intended to be rigid, mechanical, or inflexible, but should be applied in a manner serving sound judicial administration." *Id.* (quoting *Orthmann v. Apple River Campground, Inc.*, 765 F.2d 119, 121 (8th Cir.1985)). The first-filed rule is not truly a rule at all, but a principle, a "blend of courtesy and expediency." *Gavle v. Little Six, Inc.*, 555 N.W.2d 284, 291 (Minn.1996) (quotation omitted). We will reverse a district court's refusal to apply the first-filed rule only if the district court abused its discretion. *Northwest Airlines, Inc. v. American Airlines, Inc.*, 989 F.2d 1002, 1006 (8th Cir.1993).

At oral arguments before this court, Advanced Bionics's counsel acknowledged the discretionary nature of the first-filed rule. But counsel continues to advocate for an absolute application of the first-filed principle: the California case was filed first, so the Minnesota court must defer. This approach ignores authorities requiring courts to exercise their discretion in applying the "rule."

■ In deciding whether to defer to another court, a district court considers judicial economy, comity between courts, and the cost to and the convenience of the litigants; and must assess the possibility of multiple determinations of the same dispute. *Anderson*, 410 N.W.2d at 82.

There is a possibility of multiple determinations in this case. In fact, as this case proceeds, parallel litigation is taking place in California. But this fact alone does not convince us that the district court abused its discretion.

■ The court should also consider judicial comity. Judicial comity is "[t]he respect a court of one state or jurisdiction shows to another state or jurisdiction in giving effect to the other's laws and judicial decisions." *See* Black's Law Dictionary 262 (7th ed.1999). Comity is not a formal rule but rather an informal policy of deference. In the present case, neither the California nor Minnesota courts have withdrawn from this matter. The California court views the case as between a California employer and a California-based employee, and as implicating California statutes and public policy. But the dispute also involves a Minnesota company, which executed a contract in Minnesota with a Minnesota-based employee and the decisions of this state's courts are equally entitled to comity. In addition, the parties to this contract included a choice-of-laws provision, agreeing that Minnesota law should govern disputes. Comity does not require that Minnesota defer to the California court in this matter.

■ The cost to and the convenience of the litigants do not weigh heavily in favor of deference to California. Witnesses for Medtronic likely live and work in Minnesota and witnesses for Advanced Bionics, including Stultz, may live in California. But both parties are large corporations, which have demonstrated the ability to litigate in either state. This factor favors neither party.

■ Medtronic argues that the first-filed rule should not apply because Advanced Bionics filed the California action solely to obtain a favorable forum. We agree that when an anticipatory declaratory judgment action is brought for the purpose of denying the natural plaintiff of its choice of forum, the court need not and should not blindly defer to the other jurisdiction by applying the first-filed principle. When a party acts "in a calculated and systematic manner * * * to deprive the [Minnesota] court of its jurisdiction," issuing an injunction to stop the action in

another jurisdiction is appropriate. *Doerr v. Warner,* 247 Minn. 98, 109, 76 N.W.2d 505, 514 (1956). The California courts may view Medtronic's attempt to enforce the noncompete agreement in Minnesota as an attempt to evade California law. But it is clear that Advanced Bionics filed suit in California specifically to avoid Minnesota law, which is more likely to result in enforcement of the contract provision. There are compelling reasons for Minnesota courts to interpret and enforce contracts executed in this state, by residents of this state, and we agree that strict application of the first-filed rule is inappropriate. The district court did not err in exercising its discretion in considering the principles underlying the so-called first-filed "rule."

## II. Unclean Hands

Advanced Bionics argues that the district court erred in granting equitable relief to Medtronic after the "wrongful" attempt to remove the California case to federal court. The equitable defense of "unclean hands" is premised on withholding judicial assistance from a party guilty of illegal or unconscionable conduct. *Watson Co. v. United States Life Ins. Co.,* 258 N.W.2d 776, 778 (Minn.1977). The doctrine of unclean hands

> will be invoked only against a party whose conduct has been unconscionable by reason of a bad motive, or where the result induced by his conduct will be unconscionable.

*Creative Communications Consultants, Inc. v. Gaylord,* 403 N.W.2d 654, 658 (Minn.App.1987) (quotation omitted). The granting of equitable relief is within the sound discretion of the district court, and its decision will not be reversed absent a clear abuse of that discretion. *Nadeau v. County of Ramsey,* 277 N.W.2d 520, 524 (Minn.1979).

Advanced Bionics argues that in seeking removal, Medtronic engaged in "procedural misconduct" to delay the California proceeding, avoid an unfavorable ruling, and to obtain favorable equitable relief in Minnesota. It is clear that both parties have engaged in procedural maneuvering. But the doctrine of unclean hands requires something more egregious than mere litigation strategy. *Compare Hruska v. Chandler Assocs., Inc.,* 372 N.W.2d 709, 715 (Minn.1985) (employer's failure to pay discharged employee's full salary—since recovered—for a brief period in the past did not constitute "unclean hands" rendering noncompete clause unenforceable) *with Edin v. Jostens, Inc.,* 343 N.W.2d 691, 694 (Minn.App.1984) (refusing to enforce a restrictive covenant after employee wrongfully terminated). The federal court found that Medtronic sought removal for "an improper purpose" and that it knew or "recklessly disregarded the facts within its possession which made it clear that" there was not complete diversity. But the federal court declined to label Medtronic's conduct as "bad faith" despite Advanced Bionics's urging. Given the district court's discretion and because Medtronic's removal does not rise to the egregious level necessary to support a finding of unclean hands, we conclude that the district court did not err in granting equitable relief to Medtronic.

## III. Injunction

Advanced Bionics argues that the district court erred in granting an injunctive relief because Medtronic failed to demonstrate irreparable harm, and it should have applied California law, rather than Minnesota law.

The district court may grant a temporary injunction if affidavits, deposition testimony, or oral testimony demonstrate sufficient grounds. Minn.R.Civ.P.

65.02(b). The party seeking an injunction must demonstrate that there is no adequate legal remedy and that the injunction is necessary to prevent irreparable harm. *Cherne Indus., Inc. v. Grounds & Assocs., Inc.*, 278 N.W.2d 81, 92 (Minn.1979). A court may enjoin a party over whom it has in personam jurisdiction from pursuing similar litigation in another court. *Hawkins v. Ireland*, 64 Minn. 339, 344, 67 N.W. 73, 75 (1896). This court will not reverse a district court's decision to grant a temporary injunction absent a clear abuse of discretion. *Carl Bolander & Sons Co. v. City of Minneapolis*, 502 N.W.2d 203, 209 (Minn.1993); *U.S. Bank Nat'l Ass'n v. Angeion Corp.*, 615 N.W.2d 425, 434 (Minn. App.2000).

■■■ There are five factors the court considers when determining whether to issue a temporary injunction:

(1) The nature and background of the relationship between the parties preexisting the dispute giving rise to the request for relief.

(2) The harm to be suffered by plaintiff if the temporary restraint is denied as compared to that inflicted on defendant if the injunction issues pending trial.

(3) The likelihood that one party or the other will prevail on the merits when the fact situation is viewed in light of established precedents fixing the limits of equitable relief.

(4) The aspects of the fact situation, if any, which permit or require consideration of public policy expressed in the statutes, State and Federal.

(5) The administrative burdens involved in judicial supervision and enforcement of the temporary decree.

*Dahlberg Bros., Inc. v. Ford Motor Co.*, 272 Minn. 264, 274–75, 137 N.W.2d 314, 321–22 (1965) (citations omitted). We will address each of the *Dahlberg* factors in turn.

## A. Parties' Prior Relationship

■■■ The district court found that because Stultz signed the employment contract "of his own free will" and received both training and customer contacts from his employment with Medtronic, this factor favors granting injunctive relief. We agree with the district court's straightforward application of this factor.

## B. Balance of Harms

■■■ This factor focuses on the harm Medtronic may suffer if injunctive relief is denied, as compared to the harm suffered by Advanced Bionics from the grant of injunctive relief. The district court found that the loss to Advanced Bionics of one employee in a certain role is "of far less significance than what is at stake" for Medtronic. We agree.

■■■ A party seeking a temporary injunction must show that legal remedies are inadequate and that an injunction is necessary to prevent irreparable injury. *Cherne Indus., Inc.*, 278 N.W.2d at 92. Generally, the failure to show irreparable harm is, by itself, a sufficient ground for denying a temporary injunction. *Morse v. City of Waterville*, 458 N.W.2d 728, 729 (Minn.App.1990), *review denied* (Minn. Sept. 28, 1990). Whether a party has an adequate remedy at law is a legal question that an appellate court reviews independently. *ServiceMaster v. GAB Bus. Servs., Inc.*, 544 N.W.2d 302, 305 (Minn. 1996).

■■■ Advanced Bionics argues that Medtronic failed to show irreparable harm. Moreover, Advanced Bionics contends that there is no risk that trade secrets will be misappropriated, only the bare assertion by Medtronic that if Stultz works for Ad-

vanced Bionics, Medtronic would lose business.[5]

■ But

[i]rreparable injury can be inferred from the breach of a restrictive covenant if the former employee came into contact with the employer's customers in a way which obtains a personal hold on the good will of the business.

*Webb Publ'g. Co. v. Fosshage*, 426 N.W.2d 445, 448 (Minn.App.1988) (citing *Menter Co. v. Brock*, 147 Minn. 407, 410, 180 N.W. 553, 554–55 (1920), and *Thermorama, Inc. v. Buckwold*, 267 Minn. 551, 552–53, 125 N.W.2d 844, 845 (1964) (systematic solicitation of former employer's customers supports inference of irreparable harm)).

The district court found that Medtronic demonstrated that it was likely to suffer irreparable harm in the form of loss of customer connections that Stultz developed while working for Medtronic. The court concluded that "any contact Stultz has with those same persons on behalf of Advanced Bionics will amount to a taking of that goodwill."

In his affidavit Stultz admits that Medtronic's success in the neurostimulation-implant market "derives primarily from * * * relationships that its sales representatives have with the consumers." He also acknowledges that while employed by Medtronic, he "developed [his] own business contacts and relationships among medical groups and physicians in the pain management field." Stultz describes the job he obtained with Advanced Bionics as "hiring and developing a sales and marketing organization, to launch the sales of Advanced Bionics'[s] implantable spinal cord stimulator." Medtronic notes that Stultz's ability to build Advanced Bionics's business and business relationships would be the "result of his gaining access to Medtronic's customers, as [an] employee, which allowed him to develop his relationships with Medtronic's customers." The record supports the allegation that the relationships Stultz formed with customers are a direct result of his employment with Medtronic.

Stultz argues that he relies on his "skills, knowledge, business contacts and relations * * * from over fifteen years in the field of pain management," not just from his experience with Medtronic. In addition, he was told that Advanced Bionics hired him because of his "educational background and strong management, communications, relationship, and marketing skills." Stultz asserts that if he was previously "successful at developing exceptional relationships * * * it was because of [his] understanding of the medical field." But along with his skills, the record supports the district court's inference that Stultz was hired for his contacts and relationships with others in this market. Stultz's personal qualities likely aided him in developing client relationships, but he was given the opportunity to develop those relationships through his work for Medtronic.

Advanced Bionics's haste to preempt enforcement of the noncompete agreement

---

**5.** Advanced Bionics argues that because it has no competing product now and does not expect to be selling a competing product for two years, there can be no irreparable harm. But the contract Stultz signed limits the noncompete clause to work on a "Competitive Product," defined as

any product * * * that is being designed, developed, manufactured, marketed or sold

by anyone other than Medtronic and is of the same general type, performs similar functions, or is used for the same purposes as a Medtronic Product on which the employee worked during the last two years of employment * * *.

The contract definition includes competing products being "developed," and it clearly applies here.

immediately after Stultz resigned from Medtronic demonstrates the value placed on his relationships within the industry. The market for the device is finite, and the formation of relationships within this limited market is critical. Here, Stultz has acquired personal influence over customers, an influence that Stultz may take with him in his work with Advanced Bionics. *See Thermorama, Inc.,* 267 Minn. at 553, 125 N.W.2d at 845 (irreparable harm inferred as ground for temporarily enjoining former employee from soliciting former employer's customers and competing in violation of contract, where employee would suffer little detriment if he was not breaching agreement, but employer might lose customers and forfeit future benefits if injunctive relief denied).

Advanced Bionics argues that any loss claimed by Medtronic could be adequately remedied through monetary damages. Advanced Bionics also contends that because Medtronic is a large corporation, any claim of irreparable loss is "laughable." But if, as the district court found, there is a significant risk that Medtronic may lose the goodwill of a limited customer base, the total size of the corporation is irrelevant. *See Webb Publ'g. Co.,* 426 N.W.2d at 448–49 (finding irreparable harm where former employee had worked closely with clients and considered them friends, and success in soliciting their business demonstrated the "personal hold" he had on them); *Creative Communications Consultants, Inc.,* 403 N.W.2d at 657 (finding of irreparable harm based on loss of clients and threat that former employee would disclose confidential information).

Advanced Bionics repeatedly asserts that there is no risk of trade secret misuse and that it would respect confidentiality and Medtronic's trade secrets. Stultz contends that he does "not possess any trade secret information" about Medtronic's

business because he "either returned or left behind in Minnesota all confidential materials." But even if Stultz did not take documents from Medtronic's place of business, the knowledge he gained while working with Medtronic's customers gives him insight into customer preferences, and Advanced Bionics hired him to make use of that insight. The knowledge he acquired at Medtronic may also help him anticipate Medtronic's marketing plans, business plans, product development, and marketing strategy.

In comparison to the harm claimed by Medtronic, the harm to Advanced Bionics and Stultz from the injunction is limited. The noncompete clause is limited to two years and to products that compete directly with Medtronic's products. The contract states:

> It is expressly understood that the employee is free to work for a competitor * * * provided that such employment does not include any responsibilities for, or in connection with, a Competitive Product as defined in this Agreement for the two year period of this restriction.

Therefore, Stultz is only restricted from working with products that perform similar functions or are used for the same purposes as the products he worked on for Medtronic.

Stultz contends that if the restriction is enforced and he "was unable to work, earn a living, and actively maintain [his] business relationships and involvement in the neurostimulation/pain management field for over two years," his career would be irreparably harmed. But Stultz voluntarily left Medtronic's employ, knowing that future employment may be subject to the noncompete agreement, thus creating the current situation. Moreover, the noncompete agreement has not prevented him from earning a living, as Stultz is currently

living in California and working for Advanced Bionics.

### C. Likelihood of Success on Merits

The district court found that Minnesota law applies, the parties' contractual choice of law provision should be honored, and that Medtronic has shown it is likely to succeed on the merits. Advanced Bionics argues that because California's public policy generally prohibits restraints on employment and enforcement of noncompete agreements, California law should apply.

In analyzing a choice-of-law question, the first issue is whether there is an actual conflict between the law of two states. *Nodak Mut. Ins. Co. v. American Family Mut. Ins. Co.*, 604 N.W.2d 91, 93–94 (Minn.2000); *Jepson v. General Cas. Co.*, 513 N.W.2d 467, 469 (Minn.1994). "A conflict exists if the choice of one forum's law over the other will determine the outcome of the case." *Nodak Mut. Ins. Co.*, 604 N.W.2d at 94 (citation omitted).

Here, although Minnesota law disfavors noncompete agreements, the courts will enforce them under certain circumstances. *See, e.g., National Recruiters, Inc. v. Cashman*, 323 N.W.2d 736, 740 (Minn.1982). Conversely, California statutes contain prohibitions against restraining a party from engaging in a profession or business unless necessary to protect trade secrets. Cal. Bus. & Prof.Code § 16600 (West 1996). Although the resolution of this issue is uncertain, the California court has repeatedly indicated the noncompete agreement is likely unenforceable under California law. Therefore, a conflict exists, and choice of law will determine the outcome.

The next step in the choice-of-law analysis involves balancing of five factors: (1) predictability of result; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interest; and (5) application of the better rule of law.

*Jepson*, 513 N.W.2d at 470 (citing *Milkovich v. Saari*, 295 Minn. 155, 161, 203 N.W.2d 408, 412 (1973)).

### 1. Predictability of Results

This factor "represents the ideal that litigation on the same facts, regardless of where the litigation occurs, should be decided the same to avoid forum shopping." *Nodak Mut. Ins. Co.*, 604 N.W.2d at 94 (citation omitted). The factor applies primarily to consensual transactions where the parties desire advance notice of which state law will govern in future disputes. *Id.* It is intended to protect the "justified expectations of the parties to the transaction." *Richie v. Paramount Pictures Corp.*, 532 N.W.2d 235, 241 (Minn.App.1995) (quotation omitted), *rev'd on other grounds*, 544 N.W.2d 21 (Minn.1996). To the extent that the choice-of-law decision results in the parties obtaining the "benefit of their bargain," it enhances the predictability of contractual arrangements. *Jepson*, 513 N.W.2d at 470.

Here, the employment contract—a consensual transaction—included a choice-of-law provision for application of Minnesota law. Advanced Bionics was not a party to that contract and therefore had no "justified expectations." But Stultz should have reasonably expected that Minnesota law would be applied in resolving any dispute involving the employment contract, and it is clear that Medtronic had a justified expectation that Minnesota law would apply to any such dispute. This factor favors clearly the application of Minnesota law.

### 2. Maintenance of Interstate Order

The second factor is

> primarily concerned with whether the application of Minnesota law would manifest disrespect for [California's] sovereignty [or vice versa] or impede the interstate movement of people and goods. An aspect of this concern is to maintain a coherent legal system in which the courts of different states strive to sustain, rather than subvert, each other's interests in areas where their own interests are less strong.

*Id.* at 471 (citation omitted).

Advanced Bionics relies heavily on this factor and contends that because California has enacted a statute on point, California's interest in precluding enforcement of noncompete clauses is materially greater than any potential Minnesota interests. *Cf. Nodak Mut. Ins. Co.*, 604 N.W.2d at 95 (finding an equal interest between North Dakota and Minnesota based in part on fact that both states had pertinent laws).

■■■ The primary issue under this factor is whether applying Minnesota law would "manifest disrespect" for California's sovereignty or impede interstate commerce. *Jepson*, 513 N.W.2d at 471. Evidence of forum shopping, or that application of Minnesota's law would promote forum shopping, would indicate such disrespect. *Id.*

■■■ Advanced Bionics argues that applying California law is the best means to support California's public policy of disfavoring noncompete agreements. But as discussed above, Minnesota also has interests in having its contract laws enforced. Moreover, applying Minnesota law does not promote forum shopping any more than applying California law. Both parties filed suit in the state that best fit their desired outcomes. Therefore this factor favors neither state.

### 3. Simplification of Judicial Task

■■■ This third factor is often considered insignificant because courts can as easily apply another state's laws as their own. *Id.* at 472. Although Minnesota courts are fully capable of applying the law of another state, the judicial task is "obviously" simplified when a "Minnesota court applies Minnesota law." *Gimmestad v. Gimmestad*, 451 N.W.2d 662, 666 (Minn. App.1990). This factor favors Minnesota.

### 4. Advancement of the Forum's Governmental Interest

■■■ The fourth factor involves inquiry into the choice of law that would most effectively advance a "significant interest of the forum" state. *Jepson*, 513 N.W.2d at 472. This factor assures that "Minnesota courts are not called upon to apply rules of law inconsistent with Minnesota's concept of fairness and equity." *Board of Regents of Univ. of Minn. v. Royal Ins. Co. of Amer.*, 503 N.W.2d 486, 490–91 (Minn.App.1993) (citation omitted), *aff'd in part, rev'd in part*, 517 N.W.2d 888 (Minn.1994). "Minnesota's governmental interests will most clearly be advanced by application of Minnesota law." *Wille v. Farm Bureau Mut. Ins. Co.*, 432 N.W.2d 784, 786 (Minn.App.1988) (quotation omitted). Applying California law to this dispute would not advance Minnesota's interests and would reduce the protection afforded under Minnesota law to employers who enter into legal noncompete contracts. This factor favors applying Minnesota law.

### 5. Better Rule of Law

We do not reach the fifth factor, which should be applied only when the choice-of-law question remains unresolved after the other factors are considered. *Nodak Mut. Ins. Co.*, 604 N.W.2d at 96 (stating that

Minnesota courts have "not placed any emphasis on this factor in nearly 20 years"); *Board of Regents,* 503 N.W.2d at 491 (finding that this factor is applied "only when the first four factors do not clearly resolve the choice of law issue").

The choice-of-law analysis favors the application of Minnesota law. The employment contract signed by Stultz is narrowly drawn, and he has obtained employment in his field, albeit not in a directly competitive position. The contract also contains an enforceable choice-of-law provision that results in the application of Minnesota law. Under Minnesota law, Medtronic has a strong likelihood of success on the merits. We therefore affirm the district court's conclusion that Medtronic prevails on this third *Dahlberg* factor, which favors granting of an injunction.

### D. Public Policy

The fourth *Dahlberg* factor is the consideration of public policy. "Minnesota courts do not favor noncompetition agreements because they are partial restraints on trade." *Midwest Sports Mktg., Inc. v. Hillerich & Bradsby of Canada, Ltd.,* 552 N.W.2d 254, 265 (Minn.App. 1996) (citation omitted), *review denied* (Minn. Sept. 20, 1996). But restrictive covenants are enforced to the extent reasonably necessary to protect legitimate business interests. *Webb Publ'g. Co.,* 426 N.W.2d at 450. Legitimate interests that may be protected include the company's goodwill, trade secrets, and confidential information. *Roth v. Gamble–Skogmo, Inc.,* 532 F.Supp. 1029, 1031 (D.Minn.1982). Conversely, California has a statutory prohibition against restraining a party from engaging in a profession or business unless necessary to protect trade secrets. *See* Cal. Bus. & Prof.Code § 16600 (stating that "[e]xcept as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extend void.").

We do not disagree that California law expresses a policy disfavoring noncompete clauses in employment contracts. But we conclude that this case is about more than the enforceability of a noncompete clause. The public policy of this state is at issue, and it favors upholding valid contracts. Thus, although California has a public policy against noncompete clauses, Minnesota also has a strong interest in having contracts executed in this state enforced in accordance with the parties' expectations. Therefore, because this agreement contains a valid choice-of-law provision and falls within the limited circumstances in which Minnesota courts enforce noncompete agreements, public policy favors granting the injunction.

### E. Administrative Burdens of Judicial Supervision

The district court concluded that this injunction would create no administrative burdens and we agree.

The Dahlberg factors, especially the balance of harm to the parties and the likelihood of success on the merits, favor the grant of temporary injunctive relief.

### DECISION

The district court did not err in declining to apply the first-filed rule or in applying Minnesota law. In addition, the district court did not abuse its discretion in granting a defensive temporary injunction nunc pro tunc. The district court properly applied the Dalhberg factors to the facts of this case. Because Minnesota courts rightfully have jurisdiction over this litigation and the noncompete clause is enforce-

able, we affirm the district court's grant of a temporary injunction.

**Affirmed; motions denied.**