*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0988**

U. S. Bank National Association
as Legal Title Trustee for Truman 2012 SC Title Trust,
Respondent,

vs.

Thomas J. Litterer,
Appellant,
Mary Litterer,
Appellant.

**Filed February 1, 2016
Reversed and remanded
Reyes, Judge**

Dakota County District Court
File No. 19HACV151943

Kalli L. Ostlie, Shapiro & Zielke, L.L.P., Burnsville, Minnesota (for respondent)

Thomas J. Litterer, Mary Litterer, Burnsville, Minnesota (pro se appellants)

Considered and decided by Halbrooks, Presiding Judge; Stauber, Judge; and Reyes, Judge.

**U N P U B L I S H E D   O P I N I O N**

**REYES**, Judge

Appellants challenge the district court's denial of their motion to stay eviction proceedings pending resolution of a related loss-mitigation action in federal court, which includes a request to set aside the sheriff's sale and grant a temporary restraining order to

bar eviction proceedings. Because appellants' claims in the related federal litigation may directly impact the parties' later-filed eviction proceedings, we reverse and remand.

## FACTS

On February 23, 2004, appellants Thomas and Mary Litterer purchased a home (the property). To finance this purchase, appellants took out a loan, secured by a mortgage in favor of Mortgage Electronic Systems, Inc. The mortgagee's interest was later assigned to Wells Fargo.

In November 2011, Mr. Litterer lost his job. Wells Fargo informed Mr. Litterer that he was approved for a loan modification and that loan-modification documents would be sent to him by mail. Mr. Litterer never received the modification documents. In March 2012, Mr. Litterer found a new job, which was scheduled to commence in April 2012. Appellants informed Wells Fargo of this change in circumstances.

In March 2012, after several phone calls to Wells Fargo to inquire about the status of the modification documents, appellants learned that Wells Fargo sold their loan to respondent U.S. Bank National Association as Legal Title Trustee for Truman 2012 SC Title Trust and that Marix Servicing would be servicing the loan. Marix asked appellants to resubmit their loan-modification application. In April 2012, Marix informed appellants that their application was approved. But before sending the approval documents to appellants, Marix transferred the loan-servicing rights to Rushmore Loan Management Services, LLC. Rushmore asked appellants to resubmit their application. In November 2012, Rushmore informed appellants that a loan modification

2

was no longer an option because Mr. Litterer "made too much money" and that they wanted to begin a repayment plan instead. Appellants agreed.

Appellants payments were up to date through February 2013. But in February 2013, appellants were both involved in separate car accidents within one week of each other. As a result of her accident, Mrs. Litterer was physically unable to work for a month and a half. Appellants made partial payments in March 2013.

In April 2013, appellants attempted to make payment arrangements but were told by Rushmore that arrangements could not be made. Rushmore did inform appellants, however, that they could apply for a loan modification because Mrs. Litterer's accident and the resulting loss of income constituted a "life event." From May to December 2013, appellants made numerous attempts to contact Rushmore. They experienced great difficulty reaching their Rushmore representative and even tried alternative contacts, including Rushmore's general number and loss-mitigation manager. Whenever appellants did speak with someone, if anything was requested of them, they promptly sent the requested documentation.

In December 2013, respondent sent an email to appellants requesting proof of funds for an $8,500 good-faith payment towards the loan modification. Appellants sent proof of funds via email and contacted Rushmore to make sure the email was received. In January 2014, appellants received a letter from Rushmore notifying them that their modification was denied because the $8,500 payment was insufficient. Appellants contacted Rushmore and were informed that the good-faith payment required was actually $11,400. Appellants offered to provide proof of funds for the $11,400. But

3

Rushmore stated that, because the modification had been denied, nothing could be done, and there was no appeal process.

On November 26, 2014, the property was sold by sheriff's sale to respondent. The redemption period was scheduled to end in December 2014 but was extended to March 1, 2015 because appellants filed for bankruptcy. Appellants commenced a civil action in state district court on February 27, 2015, challenging Rushmore's handling of their loan-modification requests. The gravamen of the complaint was that Rushmore had violated the terms of the parties' loan agreement and that Rushmore would be unjustly enriched if it were allowed to foreclose on the property.[1] Appellants subsequently filed a second-amended complaint joining respondent as a party to this litigation.

On March 3, 2015, the district court granted appellants' request for an ex parte temporary restraining order (TRO) barring any further foreclosure or eviction proceedings. The detailed and well-reasoned order concluded that the equities favored appellants. Rushmore removed the action to federal court on March 30, 2015. The ex parte TRO expired 14 days after the removal. Fed. R. Civ. P. 65(b)(2).

On April 6, 2015, Rushmore moved to dismiss appellants' claims in federal court. Appellants did not file a lis pendens until May 1, 2015. On May 21, 2015, the federal district court denied Rushmore's motion to dismiss appellants' contractual claims and granted appellants leave to amend their complaint to include claims under Minnesota's loss-mitigation statute, Minn. Stat. § 582.043 (2014). On June 3, 2015, appellants filed

---

[1] Appellants were not represented by counsel when they filed this complaint.

4

an amended complaint in federal court requesting a TRO to bar eviction activities on the property and an order setting aside the sheriff's sale. On May 18, 2015, prior to the federal court's ruling on Rushmore's motion to dismiss, respondent commenced eviction proceedings in state district court. On June 8, 2015, the state district court denied appellants' motion to stay the eviction proceedings, granted respondent's motion for summary judgment, and ordered that a writ of recovery would issue on June 15, 2015.[2] This appeal follows.

## DECISION

Appellants contend that the district court abused its discretion by denying their motion to stay the eviction proceedings pending the outcome of their related action in federal court. We agree.

We review the district court's decision not to grant a stay of eviction proceedings for an abuse of discretion. *Real Estate Equity Strategies, LLC v. Jones*, 720 N.W.2d 352, 358 (Minn. App. 2006). Eviction actions are summary proceedings that are intended to adjudicate only the limited question of present possessory rights to the property. *Lilyerd v. Carlson*, 499 N.W.2d 803, 812 (Minn. 1993). In general, a district court does not abuse its discretion by denying a motion for a stay of eviction proceedings pending the resolution of first-filed, related litigation. *See Fed. Home Loan Mortg. Corp. v. Nedashkovskiy*, 801 N.W.2d 190, 193 (Minn. App. 2011) ("Because appellants did not

_____

[2] Appellants moved to quash the writ. The district court granted appellants' motion, and execution of the writ of recovery was stayed pending this appeal. Appellants remain in possession of the property by paying a monthly bond.

5

provide the district court with a case-specific reason why a stay was appropriate or necessary to protect their interests, the district court did not abuse its discretion by denying appellants' motion for a stay.").

However, we have also held that when "counterclaims and defenses are necessary to a fair determination of the eviction action, it is an abuse of discretion not to grant a stay of the eviction proceedings when an alternate civil action that involves those counterclaims and defenses is pending." *Bjorklund v. Bjorklund*, 753 N.W.2d 312, 318-19 (Minn. App. 2008), *review denied* (Minn. Sept. 23, 2008). In *Bjorklund*, we were presented with a scenario where

> the alleged agreement to sell the property that was at issue in the pending proceeding was central to the eviction and the eviction court could not determine whether there was *any* basis for eviction until the terms of the parties agreement had been determined by the district court in the parallel civil action.

*Fed. Home Loan Mortg. Corp. v. Mitchell*, 862 N.W.2d 67, 74 (Minn. App. 2015) (quotation omitted) (explaining the underlying issues presented in *Bjorklund*), *review denied* (Minn. Jun. 30, 2015). We have also stated that granting a stay of eviction proceedings is proper when "determining whether the actual terms of the agreement had been violated . . . was an essential prerequisite to resolving the eviction action because the eviction action otherwise risked dispossessing a party that had never been legitimately subject to dispossession at all." *Id.* at 74 (summarizing the holding in *Bjorklund*).

*Bjorklund* is controlling. Here, rather than seeking to rescind the underlying mortgage, appellants are seeking to enforce the mortgage and respondent's obligations under that agreement and Minnesota's loss-mitigation statute, Minn. Stat. § 582.043,

6

subd. 7.  Similar to the related claims present in *Bjorklund*, appellants have raised claims in the related litigation that bear directly on the validity of respondent's sheriff's sale.  *See id.* ("A mortgagor has a cause of action, based on a violation of this section, to enjoin or set aside a sale.").  And appellants' federal claims align with their defenses and counterclaims in the state court eviction action.

It appears that, in denying the stay, the state district court misapprehended the nature of the parties' related litigation in federal court.  The district court characterized appellants' federal claims as seeking "to rescind the underlying mortgage."  But the federal court characterized appellants' claims as alleging a violation of Minnesota's loss-mitigation statute.  If appellants prevail on that statutory claim, they will be entitled to set aside the sheriff's sale.  Minn. Stat. § 582.043, subd. 7; *see also Mann v. Nationstar Mortg., LLC*, No. CIV. 14-99, 2015 WL 4094209 (Minn. Dist. Ct. July 7, 2015) (voiding sheriff's sale on finding that mortgagor violated Minn. Stat. § 582.043).  If the sheriff's sale is set aside, respondent no longer has a basis for its eviction claim.  Therefore, appellants' claims in the related litigation may have a direct impact on the parties' eviction proceedings because the related federal claims could affect the validity of the sheriff's sale.

Furthermore, appellants' federal action was filed first.[3]  "The first-filed rule provides that where two courts have concurrent jurisdiction, the first to acquire

---

[3] Appellants filed their complaint in state district court on February 27, 2015, and Rushmore, servicing agent for respondent, removed the matter to federal court on March 30, 2015.  Respondent commenced its state court eviction action on May 18, 2015. Respondent was joined as a party to the federal litigation on September 24, 2015.

7

jurisdiction generally has priority to decide the case." *Medtronic, Inc. v. Advanced Bionics Corp.*, 630 N.W.2d 438, 448-49 (Minn. App. 2001). While "[t]he first-filed rule is truly not a rule at all," it is a "blend of courtesy and expediency." *Id.* at 449 (quotation omitted). "In deciding whether to defer to another court, a district court considers judicial economy, comity between courts, and the cost to and the convenience of the litigants; and must assess the possibility of multiple determinations of the same dispute." *Id.*

Judicial economy would be served by imposing a stay of the eviction proceedings. As previously noted, if appellants are successful in the federal litigation, the sheriff's sale could be voided, removing respondent's basis for evicting appellants, and thereby resolving the eviction matter. Alternatively, if respondent prevails in the federal litigation, the stay may be lifted and the eviction proceedings allowed to go forward. Granting a stay of the eviction proceedings would have shown deference to the other court's analysis of appellants' claims. Upon review of appellants' loss-mitigation claims, both the state and federal district courts determined that appellants' claims have merit. Further, allowing the eviction action to proceed could result in the unnecessary expense and inconvenience to appellants of moving out of and back into their home. Lastly, there is a possibility of multiple determinations in this case. Accordingly, all of the aforementioned principles weigh in favor of staying the eviction proceedings.

Moreover, appellants have pursued all available alternative forms of relief. Appellants have requested injunctive relief in the related litigation, continue to pursue the related matter, and have filed a notice of lis pendens on the property. *Cf.*

*Deutsche Bank Nat'l Trust Co. v. Hanson*, 841 N.W.2d 161, 166 (Minn. App. 2014) (denying a request to stay eviction proceedings where the Hansons did not seek an injunction, had not "taken much action at all" in the related litigation, and did not file a lis pendens). Although the lis pendens was filed late, the federal district court noted in its order denying respondent's motion to dismiss that appellants "contend that they can establish excusable neglect with regard to the filing of the lis pendens."

Finally, both the state and federal courts have indicated that the equities favor appellants. The state district court judge who presided over appellants' related litigation prior to its removal to federal court by respondents noted that the equities favor appellants. In granting appellants' initial request for a temporary restraining order, the state district court concluded, "If [respondent] is allowed to initiate eviction proceedings against [appellants'] residence, [respondent] will be unjustly enriched by its inequitable conduct, and [appellants] will be irreparably harmed." Similarly, faced with an opportunity to dismiss the related litigation, the federal district court indicated that "justice requires" allowing appellants' to re-plead and fully assert their claims. *See Amresco Residential Mortg. Corp. v. Stange*, 631 N.W.2d 444 (Minn. App. 2001) (affirming the denial of a stay but ordering that execution of the writ of restitution be continued until the Stanges had an opportunity in the related proceedings to move to stay execution of the writ and the district court had an opportunity to rule on that motion).

In light of the unique facts of this case, we conclude that the district court abused its discretion in denying appellants' motion to stay the eviction proceedings and granting summary judgment to respondent. Because the claims in the first-filed loss-mitigation

action are central to the defense of the eviction action, judicial economy would be served by a stay, appellants have pursued all available alternatives to obtain relief, and the equities favor appellants, we reverse and remand to the district court to vacate the judgment and grant appellants a stay pending resolution of the related federal court action.

**Reversed and remanded.**