**FIRST STATE INSURANCE COMPANY, et al., Westport Insurance Corporation, Respondents,**

v.

**MINNESOTA MINING AND MANUFACTURING COMPANY, Appellant,**

**Bloemers & Company, Assuradeuren, et al., Defendants.**

No. C6–95–539.

Court of Appeals of Minnesota.

Aug. 15, 1995.

Review Denied Oct. 18, 1995.

Gary J. Haugen, David F. Herr, R. Lawrence Purdy, Mary R. Vasaly, Cynthia F. Gilbertson, Maslon Edelman Borman & Brand, Minneapolis, and David C. Forsberg, Douglas L. Skor, J. Patrick McDavitt, Briggs & Morgan, St. Paul, and James S. Reece, Zelle & Larson, Minneapolis, for Minnesota Min. & Mfg. Co., for appellant.

Timothy J. Fetterly, Fetterly & Gordon, P.A., Minneapolis, for Aetna Cas. & Sur.

Timothy W. Waldeck, Foster Waldeck Lind & Gries, Ltd., Minneapolis, for Columbia Cas. Co.

John J. McDonald, Jr., Thomas H. Crouch, Stacy A. Broman, Meagher & Geer, P.L.L.P., Minneapolis, for Westport Ins. Corporation.

Robert L. McCollum, Jerry D. Van Cleave, McCollum & Daly, Ltd., Bloomington, Norman C. Kleinberg, Hughes, Hubbard & Reed, New York City, for First State Ins. Co., et al.

Robert J. McGuire, Cousineau, McGuire & Anderson, Minneapolis, for Allstate Ins. Co.

Paul R. Smith, Jerome B. Abrams, Austin & Abrams, P.A., Minneapolis, for London Market Insurers.

Considered and decided by PETERSON, P.J., and LANSING and SCHUMACHER, JJ.

## OPINION

LANSING, Judge.

Insurers filed a declaratory action in a Minnesota district court against a manufacturer of silicone breast implants to determine product liability coverage. The district court granted them a temporary injunction against litigation of a substantially similar action brought by the manufacturer in Texas state court. We conclude that the district court did not abuse its discretion in granting the injunction, and we affirm.

## FACTS

In 1977 Minnesota Mining & Manufacturing Company (3M) acquired McGhan Medical Corporation, a California corporation that manufactured and sold silicone gel breast implants. 3M is a Delaware corporation with its principal place of business in Minnesota. 3M manufactured and sold silicone gel breast implants through McGhan until 1984, when it sold its interest in the company. 3M bought numerous primary and excess liability policies for breast implant product liability suits.

In early 1994 3M tendered defense of its breast implant lawsuits to its insurers. Three of these insurers—First State Insurance Company, Twin City Fire Insurance Company, and Allstate Insurance Company—rejected the tender and denied coverage. They instead brought a declaratory judgment action in September 1994 against 3M and all other affected insurers to determine coverage under their policies. 3M answered and counterclaimed, seeking a declaratory judgment in its favor, damages for breach of contract, and attorneys' fees and costs. Some of the defendant insurance carriers have answered and asserted cross-claims against 3M. One of the answering carriers brought an impleader action joining sixteen additional insurance carriers.

While the Minnesota action was pending, 3M filed suit against many of the same insurers in an east Texas state court, seeking declaratory relief, damages for breach of contract, attorneys' fees and costs, and actual and punitive damages for bad faith and violations of the Texas Insurance Code. In response, plaintiff insurers and some of the

defendant insurers in the Minnesota case moved for an injunction in Minnesota to stop 3M from pursuing the Texas action. 3M then filed a temporary injunction motion in Texas to enjoin these parties from pursuing the Minnesota action. A foreign insurer removed the Texas state action to a Texas federal district court, where it is pending.

The Minnesota district court temporarily enjoined 3M from pursuing the Texas action if the federal court remanded the case to state court and from bringing any new duplicative action in another state court. It found that all parties to the Texas action are parties to the Minnesota action and that the issue of insurance coverage is identical factually and legally, and concluded that the two state actions should be litigated in only one forum due to their substantial similarity. The court also found that the Minnesota action was more comprehensive than the Texas action, because it would not only determine the coverage and duty to defend obligations of all the insurance carriers, but also would allocate responsibility among them.

## ISSUE

Did the district court abuse its discretion in granting the plaintiff insurers a temporary injunction to enjoin 3M from pursuing parallel litigation in Texas or any other state?

## ANALYSIS

■ The decision whether to grant a temporary injunction is left to the district court's discretion and will be upheld on review absent a clear abuse of that discretion. *Carl Bolander & Sons v. City of Minneapolis,* 502 N.W.2d 203, 209 (Minn.1993). An abuse of discretion occurs when the district court disregards "either the facts or the applicable principles of equity." *Cramond v. AFL–CIO,* 267 Minn. 229, 234, 126 N.W.2d 252, 257 (Minn.1964). It has long been the law in Minnesota that a court may enjoin a party over whom it has in personam jurisdiction from pursuing similar litigation in another court. *See Hawkins v. Ireland,* 64 Minn. 339, 344, 67 N.W. 73, 75 (1896) (Minnesota courts may restrain own citizens from pursuing actions in other state courts and foreign jurisdictions "whenever the facts of the case make such restraint necessary to enable the court to do justice, and prevent one citizen from obtaining an inequitable advantage over other citizens"); *Freick v. Hinkly,* 122 Minn. 24, 26, 141 N.W. 1096, 1096 (1913); *Doerr v. Warner,* 247 Minn. 98, 108, 76 N.W.2d 505, 513 (1956), *cert. dismissed,* 352 U.S. 801, 77 S.Ct. 20, 1 L.Ed.2d 37 (1956).

■ In analyzing the propriety of anti-suit injunctions, we have applied a three-part test of substantial similarity by assessing the similarity of the parties and issues and the capacity of the first action to dispose of the action to be enjoined. *St. Paul Surplus Lines Ins. v. Mentor,* 503 N.W.2d 511, 516 (Minn.App.1993); *Minnesota Mutual Life Ins. v. Anderson,* 410 N.W.2d 80, 81–82 (Minn.App.1987). The district court correctly applied each part of this test.

■ First, the finding that all parties to the Texas action are parties to the Minnesota action is supported by the record. The Minnesota action includes all parties to the Texas action because plaintiff insurers sued all known product liability insurers of 3M's breast implants to determine corresponding coverage. In the Texas action, however, 3M sued only some of its insurers. Consequently the district court did not abuse its discretion in finding the necessary similarity of parties. *See Anderson,* 410 N.W.2d at 83 (finding no abuse of discretion in part because action not enjoined involved more parties).

■ Second, the district court found an identity of issues because the "paramount and threshold" issue of insurance coverage for the product liability claims, as well as the breach of contract issue, are the same in both state actions. Although 3M raised several additional claims in the Texas action, the court correctly concluded that these tort issues stem from the central contract action and could still be raised in Minnesota in subsequent pleadings. *See Telesco v. Telesco Fuel and Masons' Materials,* 765 F.2d 356, 362 (2d Cir.1985) (in determining similarity of state and federal actions to apply "exceptional circumstances" doctrine, federal court looks at essential elements of case regardless

of theory or pleadings). The court's findings have evidentiary support and are within the court's discretion when determining substantial similarity of the issues. *See Doerr*, 247 Minn. at 108, 76 N.W.2d at 513 (injunction upheld when "at least some" of the issues were identical).

Third, the district court held that the action including all parties and all factual and legal questions is the more comprehensive. The court found the Minnesota action more comprehensive because it will bind all insurance carriers on the issues of coverage and duty to defend and will facilitate an allocation of insurance obligations. This finding once again is supported by evidence and is within the district court's discretion in assessing comprehensiveness. *See Anderson*, 410 N.W.2d at 83 (finding no abuse of discretion because action not enjoined involved more parties and was more advanced); *cf. Mentor*, 503 N.W.2d at 516 (finding abuse of discretion because issues and parties not substantially similar).

■ 3M argues that the substantial similarity analysis is only the first step in determining the propriety of granting an anti-suit injunction and that the district court failed to make additional findings on the equities of the case. It should first be noted that Minnesota courts have not applied the traditional injunction factors to decisions on anti-suit injunctions and thus the district court did not err by not specifically addressing the *Dahlberg* factors. *See Dahlberg Bros. v. Ford Motor Co.*, 272 Minn. 264, 274–75, 137 N.W.2d 314, 321–22 (1965). Moreover, the district court specifically commented on the equitable issues involved in this case. It stated at the decision's outset that "parallel actions in different states involving substantially identical issues and parties would be a clear waste of judicial resources, would impose upon all parties an additional economic burden that is both unnecessary and avoidable, would foster delay in many respects, and would create the risk of inconsistent adjudications leaving dispositive issues unresolved." The court later voiced its intent to avoid "piecemeal litigation" and to achieve instead "economy, clarity and practicality, and * * * a reasonably expeditious resolu-

tion of all issues." These policy issues are precisely those raised by early Minnesota Supreme Court decisions establishing the courts' injunctive authority to prohibit parallel litigation.

The district court also applied the first-to-file rule, thereby addressing the comity issue which, 3M argues, limits anti-suit injunctions to compelling circumstances. In considering the first-filed status in conjunction with other equitable factors, Minnesota courts have long held that the rule recognizes the importance of comity, while permitting the courts discretion in granting anti-suit injunctions. *See Freick*, 122 Minn. at 27–28, 141 N.W. at 1096–97 ("[o]rdinarily the court that first obtains jurisdiction retains it, and other courts will not interfere" and noting that if Minnesota suit had been brought before New Jersey filing, "it might perhaps furnish a basis for an injunction."); *Doerr*, 247 Minn. at 109, 76 N.W.2d at 514 ("[s]ince the Minnesota court first acquired jurisdiction, * * * it follows as a matter of well-recognized comity that such jurisdiction takes precedence and is a bar to acquiring conflicting jurisdiction in another state. Comity has been given increasing recognition whereby the states yield to each other in matters of jurisdiction in order to reduce to a minimum those areas of irreconcilable conflict which delay and tend to defeat the orderly administration of justice."); *Anderson*, 410 N.W.2d at 82 (when two actions in courts of concurrent jurisdiction are substantially similar, comity requires that "the court which first acquires jurisdiction, * * * retains its jurisdiction" (citations omitted)).

■ 3M contends that this court's treatment of the "first-to-file" rule in *Mentor* requires reversal of the district court. In *Mentor*, we did not consider the rule in light of the substantial similarities test for granting an anti-suit injunction but instead used it to determine that a Minnesota district court did not abuse its discretion in refusing to dismiss a first-filed action in favor of a parallel proceeding in another state. 503 N.W.2d at 515–16. To otherwise read *Mentor's* statement on inapplicability of the rule when there is no concurrent jurisdiction would directly contradict Minnesota Supreme Court

anti-suit injunction precedent. *See Freick,* 122 Minn. at 27–28, 141 N.W. at 1096–97; *Doerr,* 247 Minn. at 109, 76 N.W.2d at 514. The district court did not misapply the law by relying on the first-filed status in addition to the other anti-suit injunction factors in reaching its conclusion.

 3M also asserts that the district court erred by not interpreting the service-of-suit clause found in some of the insurance contracts to limit the court's power to issue a temporary injunction. It specifically argues that this clause prohibits an insurer from interfering with an action commenced by its insured, relying on *City of Rose City v. Nutmeg Ins. Co.,* 931 F.2d 13 (5th Cir.1991), *cert. denied,* 502 U.S. 908, 112 S.Ct. 301, 116 L.Ed.2d 244 (1991). But *Nutmeg,* which held that a service-of-suit clause precludes an insurer from removing an insured's state court action to federal court, *id.* at 15, focused exclusively on interpretation of the contract language; because it did not involve parallel litigation, *Nutmeg* did not address the issues surrounding a court's equitable powers to enjoin litigation.

In contrast, the Fifth Circuit subsequently held that the service-of-suit clause does not prevent an insurer from instituting its own action against an insured, noting that it "simply has no application" to actions first instituted by an insurer. *International Insurance Co. v. McDermott Inc.,* 956 F.2d 93, 95–96 (5th Cir.1992), *cert denied,* —— U.S. ——, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992); *see also Mentor,* 503 N.W.2d at 515 (clause does not waive insurer's right to institute action in forum of its choice even though it waives insurer's defense of lack of personal jurisdiction in actions by insured). Given its interpretation of the clause, *McDermott* acknowledged the possibility of the same issue being litigated in two different courts, concluding that "that problem may be dealt with by reference to the usual panoply of rules governing judicial economy, the integrity of judgments, comity between federal and state courts, and the like." 956 F.2d at 96 & n. 1. We conclude that the district court did not err in determining that the service-of-suit clause did not prohibit the plaintiff insurers from bringing the declaratory judgment ac-

tion in Minnesota and did not prevent the court from using its equitable authority to grant the injunction against the parallel action.

Finally, we note with approval the district court's comment that this case did not pose a forum non conveniens argument, and thus, its disposition does not prevent the parties from raising this issue in the future.

## DECISION

The district court did not abuse its discretion by enjoining an action in another state court that is substantially similar to the action filed first in its jurisdiction.

**Affirmed.**