Harold E. BJORKLUND, Trustee of the Harold E. Bjorklund Revocable Trust U/A January 14, 2004, Respondent,

v.

BJORKLUND TRUCKING, INC., Appellant.

No. A07–1327.

Court of Appeals of Minnesota.

July 22, 2008.

Timothy A. Sullivan, Brigid M. Goss, Best & Flanagan, L.L.P., Eric W. Forsberg, Forsberg Law Office, P.A., Minneapolis, MN, for respondent.

Michael W. Haag, Thomas W. Pahl, Hillary B. Parsons, Foley & Mansfield, P.L.L.P., Minneapolis, MN, and Kelly J. Shannon, G & K Services, Inc., Minnetonka, MN, for appellant.

Considered and decided by WORKE, Presiding Judge; HALBROOKS, Judge; and STONEBURNER, Judge.

## OPINION

STONEBURNER, Judge.

Appellant, a trucking business, challenges as an abuse of discretion the district court's denial of its motion to stay an action to evict appellant from commercial property that it has occupied for more than 30 years pending resolution of an existing, separate action that would resolve possession and ownership of the subject property and all other claims appellant had asserted against respondent, the record titleholder. Appellant seeks reversal of the eviction verdict and asks that this court remand with instructions to the district court to stay the eviction action pending resolution of the first-filed action. In the alternative, appellant argues that it is entitled to a new trial in the eviction action, arguing that the district court committed reversible error by failing to submit appellant's affirmative defenses to the jury through instructions and special-verdict

questions. Because we conclude that the district court's failure to stay the eviction action was an abuse of discretion constituting reversible error, we reverse and remand.

## FACTS

Respondent Harold E. Bjorklund, Trustee of the Bjorklund Revocable Trust U/A January 14, 2004, (Bjorklund) is the father of Bruce Bjorklund and Wanda Sapatnekar. Wanda Sapatnekar is married to Sunil Sapatnekar. From 1965 until December 30, 1993, Bjorklund was the sole shareholder of appellant Bjorklund Trucking, Inc. (BTI). In 1975 and 1977, Bjorklund bought property in Scott County. BTI uses this property and property owned by Bjorklund in Wright County for its business.

As he planned for his retirement, Bjorklund consulted his son-in-law, Sunil Sapatnekar, who holds an M.B.A. in new-business development, about BTI's operation. As a result of these discussions, the Sapanekars moved from New Jersey to Minnesota in the summer of 1993, and Sunil Sapatnekar became BTI's chief operating officer.

In December 1993, Bjorklund convened a meeting to discuss the future of BTI. The meeting was attended by Bjorklund; Bruce Bjorklund; the Sapatnekars; BTI's and Bjorklund's accountant, Jim Daleiden; BTI's and Bjorklund's attorney, Andy Clark; and Mike Frost, an attorney at Clark's firm who was involved in Bjorklund's estate planning. At that meeting, Bjorklund decided to transfer 98 of his 100 shares of BTI stock to his two children equally. The shares were transferred in 1993 and 1994. An agreement was also reached that BTI would pay Bjorklund $64,000 annually.

According to BTI, the annual payments, which equaled the amount of money that Bjorklund had been earning as an annual salary from BTI, were made at Bjorklund's request to cover his living expenses after he withdrew from management and ownership of BTI, and the payments were to end when Bjorklund began to receive pension benefits from BTI. BTI also asserts that Bjorklund agreed that, when the payments ended, he would transfer title of the properties occupied by BTI in Scott and Wright Counties to BTI. BTI asserts that it agreed to characterize the payments as rent so that Bjorklund's social-security entitlement would not be affected. But BTI considered the payments to be for purchase of the property, even though the amount of the payment was not related to the lands' values.

Bjorklund, however, denies that he agreed to transfer the Scott County and Wright County properties to BTI. Bjorklund says that he agreed only to lease the properties to BTI indefinitely on a month-to-month lease for $64,000 per year plus payment of real-estate taxes and insurance.

From 1994 through mid–2000, BTI paid Bjorklund $64,000 annually. All business records of both parties characterize the payments as rent. After Bjorklund began to receive pension benefits from BTI, BTI stopped making the annual payments. BTI continued to insure the Scott County property at issue in this case and paid the real-estate taxes into 2005. Bjorklund did not transfer title to the Scott County and Wright County properties to BTI, but he did not request further payments and did not ask BTI to vacate the properties until the family became divided and litigation was pending.

At trial, Bjorklund testified that on Thanksgiving in 2003, the Sapatnekars asked him to sign both properties over to BTI and that this request made him so

angry that he almost left the family dinner. This appears to be the beginning of what the district court ultimately characterized as a "family grudge."

In January 2004, Bjorklund transferred title to the Scott County and Wright County properties to the Bjorklund Trust. Shortly after that transfer, Clark, as counsel for BTI, wrote to Bjorklund reminding him that he had agreed to transfer title to the properties to BTI. Bjorklund testified at trial that he does not recall receiving that letter. At about this same time, Sunil Sapatnekar purchased the two remaining shares of BTI stock, which BTI acquired from Bjorklund in 1995, making the Sapatnekars the majority owners of the corporation.

In June 2005, BTI's attorney wrote to Frost, asking that Bjorklund fulfill his agreement to transfer the properties to BTI. Bruce Bjorklund, at the time an officer and director of BTI, took the position that Bjorklund never promised to transfer the Scott County and Wright County properties to BTI, causing a rift in BTI's management as well as within the family. In October 2005, Bruce Bjorklund sued BTI, Bjorklund, and the Sapatnekars in Wright County District Court, alleging in part that BTI had not afforded him certain shareholder preemptive rights to the two shares purchased by Sunil Sapatnekar. BTI cross-claimed against Bjorklund, alleging breach of contract, unjust enrichment, promissory estoppel, fraud, and misappropriation of corporate assets, and seeking specific performance of the alleged contractual obligation to transfer title to the properties to BTI.

Six days after BTI filed its cross-claims, Bjorklund initiated an eviction action in Scott County District Court, seeking to evict BTI from the Scott County properties. BTI moved for a stay or for an order consolidating the eviction action with the litigation pending in Wright County. The district court denied both motions. Subsequently, Bjorklund, who had not served BTI with a notice to vacate before initiating the eviction action, voluntarily dismissed the action without prejudice. A few days later, however, Bjorklund sent BTI a letter purporting to terminate a tenancy-at-will relationship between himself and BTI. When BTI failed to vacate, Bjorklund brought this eviction action.[1] BTI moved to stay the eviction proceedings pending resolution of the Wright County action, or, in the alternative, for a full hearing on its claims against Bjorklund. The district court denied BTI's motion for a stay, concluding that circumstances had not changed after it denied BTI's prior motion for a stay of eviction proceedings. The order denying the stay did not address BTI's request to expand the scope of the proceeding.

BTI's answer in the eviction action asserted that Bjorklund wrongfully holds title to the Scott County and Wright County properties because he had agreed to transfer title to BTI. BTI alleged that it more than fulfilled the original agreement by making payments for six years, but Bjorklund refused to transfer title and instead fraudulently transferred the properties to his trust and made up a false story that BTI occupied the property under an oral lease. BTI also counterclaimed against Bjorklund for breach of contract, specific performance, promissory estoppel, unjust enrichment, constructive trust, fraudulent transfer, and forcible entry.

---

1. Bjorklund also brought an eviction action in Wright County seeking to evict BTI from the property there; but on BTI's motion, that action was stayed pending resolution of the already existing litigation in Wright County.

Bjorklund moved to dismiss or strike BTI's counterclaim and for summary judgment in the eviction action. Bjorklund asserted that because the counterclaims mirror allegations in the action pending in Wright County and because the district court had denied BTI's first motion to consolidate the eviction action with the Wright County action, BTI should be collaterally estopped from circumventing that order by asserting its counterclaims in the eviction action. Bjorklund also argued that the district court lacked jurisdiction over the counterclaims, citing pre–1998 caselaw [2] stating that eviction actions are intended to address only the issue of possession of the property and asserting that because the eviction statute does not provide for counterclaims, none are allowed. Bjorklund asserted that the counterclaims should be resolved in the Wright County action.

The district court denied Bjorklund's motion for summary judgment, reserved Bjorklund's motion to dismiss BTI's counterclaims, and set the matter for trial. In a brief memorandum, the district court stated that eviction actions are "summary proceedings [ ] trying only the right to possession" and that "[u]ntil the trial is concluded, it is premature to dismiss the counterclaims, which may very well be allowed to continue whether [Bjorklund] is successful or not."

Before trial, Bjorklund moved in limine to preclude BTI from introducing evidence relating to counterclaims that were pending in the Wright County action, arguing that the scope of the eviction action is limited to a determination regarding the right to present possession and that all equitable counterclaims must be raised in a separate proceeding. Bjorklund argued that even if the district court were to determine that the evidence is relevant to the eviction action, it should exclude it due to the risk of confusing the issues and misleading the jury. Bjorklund also argued that evidence of an alleged oral agreement to transfer title to property is precluded under the statute of frauds and that evidence of the fair market value of the property is irrelevant to the issue of possession, "the only matter at issue in an eviction proceeding."

BTI countered that the doctrine of part performance removed the oral agreement to transfer property from the statute of frauds and that evidence of such agreement should be admitted. BTI renewed its motion for a stay of the eviction action, or alternatively, that it be allowed to assert all of its claims against Bjorklund in the eviction action, arguing that granting the motion in limine would put BTI at risk of inconsistent verdicts in the two actions.

The district court ruled that, to the extent BTI was arguing that the agreement with Bjorklund was for purchase of the property and not a lease, BTI could assert its claim as an affirmative defense in the eviction action but could not seek any affirmative relief or assert additional claims against Bjorklund.

A jury trial began on May 22, 2007, during which the district court was repeatedly called on to address the scope of evidence to be presented. At the close of testimony, BTI proposed a special-verdict form consisting of 16 questions covering its counter-claims for breach of contract, promissory estoppel, misrepresentation,

**2.** In 1998, unlawful-detainer actions were replaced with eviction actions. This court has held that because eviction actions now originate in district court, the district court may, despite the statutory description of eviction actions as "summary," expand the scope of such an action to address defendant's equitable defenses to title. *Fraser v. Fraser*, 642 N.W.2d 34, 40–41 (Minn.App.2002).

unjust enrichment, and ownership and possession of the Scott County property. BTI's proposed jury instructions included instructions on breach of contract, contract implied in fact, promissory estoppel, unjust enrichment/constructive trust, specific performance, equitable estoppel, full and part performance, and waiver. The district court denied all of BTI's requested jury instructions and special-verdict questions, and instructed the jury only on eviction for non-payment of rent or termination of lease, definition of landlord, definition of lease, and definition of a contract. A single-question special-verdict form was submitted to the jury, asking:

> Do you, the Jury, in the above-entitled action, find that the facts alleged in the complaint are true, and that [Bjorklund] shall recover possession of the premises and that [BTI] shall vacate the premises immediately?

The jury answered "yes." The district court accepted the jury's verdict against BTI but stayed the writ of execution for seven days.

BTI moved for a new trial, arguing that the district court's failure to instruct the jury on its affirmative defenses and failure to mention the affirmative defenses in the special-verdict form required a new trial. BTI also moved to continue to stay the writ of execution. The district court denied BTI's motion for a new trial but granted the motion to stay further proceedings and execution of the writ. In a memorandum supporting the order, the district court stated that "[b]ecause of the summary nature of an [eviction] action the jury in this action was simply being asked to determine whether there was a lease, whether it had been breached and whether [BTI] was still in possession." The district court noted that BTI's affirmative defense of possession by purchase "was fully developed during the trial and fully argued to

the jury, and did not need further instruction." The district court implied that it was without authority to supplement the special-verdict form contained in Minn. Stat. § 504B.355 (2006). This appeal followed.

## ISSUES

Did the district court abuse its discretion by not staying the eviction action pending a final determination on the merits of an existing action in Wright County that would be dispositive of possession and ownership of all commercial real estate occupied by BTI and all other claims BTI asserted against Bjorklund?

## ANALYSIS

BTI argues that the district court abused its discretion when it declined to stay the eviction proceeding pending a final determination in the existing litigation in Wright County. "Generally, whether to stay a proceeding is discretionary with the district court, [and] its decision on the issue will not be altered on appeal absent an abuse of that discretion." *Real Estate Equity Strategies, LLC v. Jones,* 720 N.W.2d 352, 358 (Minn.App. 2006).

"In deciding whether to defer to another court, a district court considers judicial economy, comity between courts, and the cost to and the convenience of the litigants...." *Medtronic, Inc. v. Advanced Bionics Corp.,* 630 N.W.2d 438, 449 (Minn.App.2001); *see also First State Ins. Co. v. Minn. Mining & Mfg. Co.,* 535 N.W.2d 684, 688 (Minn.App.1995) (stating that "[i]n considering the first-filed status in conjunction with other equitable factors, Minnesota courts have long held that the [first-filed] rule recognizes the importance of comity, while permitting the [district] courts discretion in granting anti-suit in-

junctions"), *review denied* (Minn. Oct. 18, 1995); *Minn. Mut. Life Ins. v. Anderson,* 410 N.W.2d 80, 82 (Minn.App.1987) (stating that when two actions in courts of concurrent jurisdiction are substantially similar, comity requires that "the first court to acquire jurisdiction has priority in considering the case"). The district court "must [also] assess the possibility of multiple determinations of the same dispute." *Medtronic,* 630 N.W.2d at 449.

BTI acknowledges that the district court's decision whether to stay an eviction proceeding is discretionary and that the "first-filed rule" is not a formal procedural rule but rather a principle based on courtesy and expediency. Nonetheless, BTI contends that denial of its motions to stay was an abuse of discretion under the supreme court's ruling in *Rice Park Props. v. Robins, Kaplan, Miller & Ciresi,* 532 N.W.2d 556 (Minn.1995). BTI asserts that *Rice Park* "specific[ally] rul[ed] that it is appropriate to stay the eviction proceeding pending determination of an earlier-filed and all-encompassing action." But, as Bjorklund correctly points out, *Rice Park* merely affirms a district court's "considerable discretion" to stay an eviction action pending the resolution of a first-filed action. 532 N.W.2d at 556. *Rice Park* does not mandate a stay when other litigation is pending. *Id.*

BTI further argues that the district court should have stayed this action due to the possibility of "multiple litigation and conflicting results," citing *Anderson.* In *Anderson,* this court affirmed the district court's temporary injunction prohibiting further prosecutions or actions until the first-filed action was resolved, noting that "[t]he most critical aspect of [that] case [was] the possibility of multiple litigation and conflicting results." 410 N.W.2d at 82–83. But *Anderson,* like *Rice Park,* affirmed an exercise of discretion; it did not

mandate a stay. And by itself, the possibility of multiple determinations is not enough to establish that the district court abused its discretion by not staying the proceedings. *Medtronic,* 630 N.W.2d at 449–50.

■ Although neither *Rice Park* nor *Anderson* mandates that the district court stay an eviction proceeding pending an outcome in a first-filed suit, we conclude that the district court in this case abused its discretion by not doing so. In *Fraser v. Fraser,* we addressed whether the scope of an eviction proceeding under the current statute is as limited as that of unlawful detainer proceedings under the former statute. 642 N.W.2d 34, 40 (Minn.App. 2002). We stated that

> to the extent [the possessor of land] has the ability to litigate . . . equitable [claims] and other claims and defenses in alternate civil proceedings, it would be inappropriate . . . to seek to do so in [an] eviction action; only if the eviction action presents the only forum for litigating these claims would it be appropriate for the district court to entertain them in that action.

*Id.* at 40–41. We further cited to this court's decision in *Amresco Residential Mortgage Corp. v. Stange,* 631 N.W.2d 444 (Minn.App.2001), in which we affirmed dismissal of counterclaims in an eviction action "because an 'alternate process' was available for their resolution," noting that "a party to such an alternate proceeding could seek to enjoin the prosecution of the eviction action pending determination of its challenges." *Id.* at 40 (citing *Amresco,* 631 N.W.2d at 445–46). We now hold that when the counterclaims and defenses are necessary to a fair determination of the eviction action, it is an abuse of discretion not to grant a stay of the eviction proceedings when an alternate civil action that

involves those counterclaims and defenses is pending.

In this case, the district court considered BTI's requests for a stay of the eviction proceeding several times: after Bjorklund filed the first eviction action in December 2005; after Bjorklund filed the present eviction action; during trial; and on BTI's motion for a new trial. The district court repeatedly cited pre–1998 cases for the proposition that "[t]he scope and purpose of [an eviction] action differs so essentially from the scope and purpose of an action to enforce equitable rights in the property that the pendency of the latter action cannot be held to bar the right to prosecute the former."[3] But the district court also concluded that it had to allow BTI to defend the eviction action by presenting evidence that the agreement between the parties was for purchase, not lease, of the property. The district court plainly contemplated that BTI would be able to fully litigate its additional claims against Bjorklund in the shareholder action and did not address the possibility that, or the extent to which, BTI could be collaterally estopped by the eviction verdict from asserting those claims in the Wright County action.[4] *See Burgmeier v. Bjur*, 533 N.W.2d 67, 70 (Minn.App.1995) (noting limited collateral-estoppel effect of unlawful detainer rulings), *review denied* (Sept. 20, 1995).

At trial, the district court expressed its frustration with attempting to fit this case into the confines of an eviction proceeding. In the context of addressing the scope of evidence that BTI could present, the dis-

trict court stated that, had it intended to try all the claims at issue in the Wright County action, it "should have just stayed this proceeding to begin with." And at the hearing on BTI's new-trial motion, the district court noted "that this [eviction] statute ... just doesn't work very well in a context of a case like [this], but ... it's still ... a summary proceeding."

We recognize that existing caselaw provides very little guidance to the district court on exercising its discretion to stay or expand the scope of an eviction proceeding when other litigation is pending that would resolve the issue of possession. But we conclude that, on this record, once the district court determined that some of BTI's claims against Bjorklund in the first-filed Wright County action were essential to BTI's defense of the eviction action, the district court abused its discretion by failing to grant BTI's motion to stay the eviction proceedings pending resolution of all of BTI's claims against Bjorklund in the first-filed action. We further conclude that the abuse of discretion constituted reversible error in this case because the district court limited the nature and types of claims it allowed BTI to assert in the eviction action and failed to submit BTI's claims to the jury. This decision forced BTI to present its claims piecemeal and subjected BTI to the possibility of being collaterally estopped from litigating its claims against Bjorklund to a single jury in a single action. We therefore reverse the eviction verdict and remand with instructions to the district court to stay the eviction action until BTI's claims against

---

3. The court cited *William Weisman Holding Co. v. Miller*, 152 Minn. 330, 332, 188 N.W. 732, 733 (1922). *See also Park Drive P'ship v. Granse*, No. C7–96–401, 1996 WL 537498, at *1 (Minn.App. Sept. 24, 1996) (holding that pending quiet-title action did not bar unlawful-detainer proceeding), *review denied* (Minn. Oct. 31, 1996).

4. The record reflects that Bjorklund has moved in the Wright County action for a ruling that BTI is collaterally estopped by the eviction verdict from its cross-claims against Bjorklund. The Wright County District Court has stayed a decision on the motion pending the outcome of this appeal.

Bjorklund are resolved in the Wright County action, understanding that a verdict in the Wright County action will, in fact, resolve the issue of possession as to all of the property held by the Bjorklund Trust and occupied by BTI.

## DECISION

The district court, having determined that some claims asserted by BTI against Bjorklund in an existing action were essential to BTI's defense of the eviction action, abused its discretion by denying BTI's motion to stay the eviction action pending resolution of the first-filed action.

**Reversed and remanded.**