# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A16-0770

Pamela Maslowski,
Respondent,

vs.

Prospect Funding Partners LLC,
Defendant,

Prospect Funding Holdings LLC,
Appellant.

**Filed February 13, 2017**
**Affirmed**
**Larkin, Judge**

Hennepin County District Court
File No. 27-CV-15-15143

James R. Schwebel, James S. Ballentine, Matthew J. Barber, Schwebel, Goetz & Sieben, P.A., Minneapolis, Minnesota (for respondent)

Daniel A. Beckman, Abigail A. Pettit, Gislason & Hunter LLP, Minneapolis, Minnesota (for appellant)

Considered and decided by Hooten, Presiding Judge; Peterson, Judge; and Larkin, Judge.

## S Y L L A B U S

A district court does not abuse its discretion by refusing to enforce a forum-selection clause that is inconsistent with Minnesota's local interest against champerty.

**O P I N I O N**

**LARKIN**, Judge

This appeal stems from an agreement in which appellant purchased an interest in respondent's Minnesota personal-injury lawsuit. Appellant sued respondent in New York, seeking to enforce the agreement. Respondent sued appellant in Minnesota, seeking a declaration that the agreement violates Minnesota's policy against champerty and is unenforceable. Appellant challenges the district court's refusal to enforce a forum-selection clause in the agreement, which requires the parties to bring any action relating to the agreement in New York. Appellant also challenges the district court's issuance of an anti-suit injunction enjoining appellant from prosecuting its New York action. Because the district court did not abuse its discretion by refusing to enforce the forum-selection clause or by issuing the anti-suit injunction, we affirm.

**FACTS**

In March 2012, respondent Pamela Maslowski, a Minnesota resident, was injured in a motor-vehicle accident. Maslowski sued to recover damages for the personal injuries she sustained in the accident. While Maslowski's personal-injury suit was pending, she needed money for living expenses. In May 2014, Maslowski entered into an agreement with appellant Prospect Funding Holdings LLC (Prospect), through its manager at its office in Minnetonka,[1] under which Prospect would provide Maslowski with $6,000 in exchange

---

[1] Maslowski's complaint alleges that Prospect is a Florida limited liability company with its principal place of business in Florida. In its answer, Prospect claimed that it is a New York limited liability company with its principal place of business in Minnesota. In later filings, Prospect claimed that it is a New York entity with a New York office.

2

for an interest in her personal-injury action. The agreement provides that if Maslowski recovers in the personal-injury action, Prospect is entitled to recover $6,000, a $1,425 processing fee, and 60% annual interest. The agreement further provides that if Maslowski does not recover in the personal-injury suit, Prospect will recover nothing.

Under the agreement, the transaction is to be treated as a sale of Maslowski's interest in the personal-injury suit and not as a loan, Maslowski is prohibited from assigning any other interest in the personal-injury action or the proceeds thereof without Prospect's prior written consent, and Maslowski is not permitted to hire a new attorney unless she first notifies Prospect in writing and requires the new attorney to execute an "Attorney Acknowledgement of the Irrevocable Letter of Direction." The agreement defines breach to include Maslowski's termination of her attorney's representation without notice to Prospect, termination followed by a replacement attorney's failure to execute an "Attorney Acknowledgement of the Irrevocable Letter of Direction," or Maslowski's receipt of additional advances without Prospect's consent. In the event of a breach, Maslowski must pay Prospect twice the purchase amount. All notices required under the agreement are to be sent to Prospect's Minnesota address.

The agreement includes a choice-of-law clause designating New York law as the applicable law. The agreement also includes the following forum-selection clause:

> THE PARTIES IRREVOCABLY AGREE THAT ALL ACTIONS OR PROCEEDINGS IN ANY WAY, MANNER OR RESPECT, ARISING OUT OF OR RELATED TO THIS AGREEMENT SHALL BE LITIGATED ONLY IN COURTS HAVING SITUS IN NEW YORK COUNTY, NEW YORK. EACH PARTY CONSENTS AND SUBMITS TO PERSONAL JURISDICTION IN THE STATE OF NEW

3

YORK AND WAIVES ANY RIGHT SUCH PARTY MAY HAVE TO TRANSFER THE VENUE OF ANY SUCH ACTION OR PROCEEDING.

Maslowski's complaint in the underlying action seeks a declaration that Maslowski's agreement with Prospect is void because it is champertous,[2] "against Minnesota policy," "intended to evade Minnesota law," and unconscionable. The complaint lists Prospect and Prospect Funding Partners LLC, an entity which "originates, services, administers and monitors claims" on behalf of Prospect, as defendants.[3] On July 7, 2015, Maslowski unsuccessfully attempted to serve the complaint on Prospect at its Minnesota office.

On July 10, Prospect filed a complaint in New York against Maslowski, Maslowski's Minnesota counsel, and counsel's law firm, claiming breach of contract, unjust enrichment, promissory estoppel, breach of the duty of good faith and fair dealing, negligent misrepresentation, money had and received, and anticipatory breach. Prospect's complaint included the following allegations: (1) Maslowski's personal-injury case was going to settle; (2) Prospect notified Maslowski that $14,108 was due to Prospect if the case settled and payment was made on or before September 22, 2015; (3) Maslowski's attorney informed Prospect that the funding agreement is unenforceable; (4) Maslowski failed to remit any payment in accordance with the agreement; and (5) Maslowski and her attorney indicated they would not comply with the terms of the agreement.

---

[2] "Champerty" is defined on page nine of this opinion.
[3] Prospect Funding Partners LLC is not a party to this appeal.

4

On August 6, Maslowski served her complaint in the Minnesota action against Prospect on Prospect through the Minnesota Secretary of State. On August 26, Prospect moved the Minnesota district court to dismiss Maslowski's action, asserting that she brought her action "in an improper jurisdiction in violation of a mandatory forum[-] selection clause in the agreement," that "a case based on the same dispute was already pending in New York when the complaint in the present case was served," and that under "the principles of comity, in particular the 'first to file' rule, New York is the proper forum to adjudicate this dispute."

In September, Maslowski, her Minnesota counsel, and counsel's law firm moved to dismiss Prospect's New York action on forum non conveniens grounds and because the New York court lacked personal jurisdiction over Maslowski's lawyer and his law firm. The New York Supreme Court, New York County, granted the motion to dismiss as to Maslowski's lawyer and his law firm, but the court denied the motion to dismiss as to Maslowski, reasoning that Maslowski is contractually bound to have her dispute with Prospect decided in a New York forum. On November 19, Maslowski moved the Minnesota district court to enjoin Prospect from prosecuting its New York action until final judgment is entered in the Minnesota action.

On December 21, the Minnesota district court denied Prospect's motion to dismiss the Minnesota action. The district court reasoned that "Minnesota courts have stated and reaffirmed that they will not enforce champertous agreements" and that another district court recently held a "contract that is substantially identical to the Agreement in this case, having been drafted by [Prospect], to be unenforceable." The district court noted, "When

Maslowski entered into the agreement that underlies this lawsuit with [Prospect] . . . [Prospect] had changed the forum-selection and choice-of-law clauses in their form agreement from Minnesota to New York." The district court reasoned that Prospect "chose a sort of 'end-around' play, by using the same contract form as before, but stating that it would be governed by New York law, and subject to suit only in the New York court system."

The district court explained:

> If this court were to enforce the forum selection clause as [Prospect] request[s], and if thereafter a New York court, applying New York law, were to decide that champertous contracts are permissible and enforceable in Minnesota, that would effectively reverse a line of precedent that has been established in Minnesota ever since 1897, and reaffirmed by Minnesota's appellate court as recently as 2003, without any Minnesota court having any say in the matter. If the Minnesota Supreme Court's ruling that champertous contracts are unenforceable in this state is to be reversed, it should be by an affirmative decision of the Minnesota Supreme Court, and not by a corporate decision to select a different state's law to govern such contracts in this state.

The district court concluded that "the outcome of the dispute between the parties in this case will be felt within this State, and not anywhere in New York" and that enforcing the forum-selection clause "would result in the contravention of a strong Minnesota public policy that its courts should decide whether champertous agreements may be enforced within this state." Prospect requested reconsideration.

On January 14, 2016, Maslowski moved for judgment on the pleadings in her Minnesota action. On the same day, Prospect moved the New York Supreme Court to enjoin Maslowski from prosecuting her Minnesota action. On January 27, the New York

6

Supreme Court granted Prospect's motion to enjoin Maslowski, based on its earlier ruling that Maslowski is bound by the forum-selection clause, but the New York Supreme Court did not order Maslowski to withdraw motions pending before the Minnesota district court.

On March 4, the Minnesota district court denied Prospect's request for reconsideration, denied Maslowski's motion for judgment on the pleadings, and granted Maslowski's motion to enjoin Prospect from prosecuting its New York action. As to the injunction, the district court found that the Minnesota and New York actions involve similar parties and similar issues, that resolution of the Minnesota action would dispose of the New York action, and that "principles of comity and equity favor [the Minnesota] forum, and not New York." Prospect appeals.[4]

**ISSUES**

I.      Did the district court abuse its discretion by refusing to enforce the forum-selection clause in the parties' agreement?

II.     Did the district court abuse its discretion by issuing an anti-suit injunction?

---

[4] Following oral argument in this case, the New York Supreme Court, Appellate Division, reversed the New York Supreme Court's denial of Maslowski's motion to dismiss the New York action and its order enjoining Maslowski from prosecuting the Minnesota action. *Prospect Funding Holdings LLC v. Maslowski*, No. 2747-2748-2748A-2748B, 2017 WL 113078 (N.Y. App. Div. Jan. 12, 2017). The New York Supreme Court, Appellate Division, found that "Maslowski demonstrated that the choice of forum provision in the parties' agreement is unreasonable and should not be enforced," noting that "[e]very aspect of the transaction at issue occurred in Minnesota, the parties, documents, and witnesses are located in Minnesota, and defending this action in New York would be a substantial hardship to Ms. Maslowski." *Id.* Prospect moved for an order granting reargument of that appeal or leave to appeal to the New York Court of Appeals. Prospect's motion for reargument or appeal to the New York Court of Appeals is currently pending.

7

# ANALYSIS

## I.

Prospect contends that the district court erred by failing to enforce the forum-selection clause in the parties' agreement. Whether to enforce a forum-selection clause is within the discretion of the district court, and this court will affirm the district court's ruling unless it clearly abused its discretion. *Personalized Mktg. Serv., Inc. v. Stotler & Co.*, 447 N.W.2d 447, 450 (Minn. App. 1989), *review denied* (Minn. Jan. 12, 1990). A district court abuses its discretion when it misapplies the law. *Minneapolis Grand, LLC v. Galt Funding LLC*, 791 N.W.2d 549, 556 (Minn. App. 2010).

In *Hauenstein & Bermeister, Inc. v. Met-Fab Indus.*, *Inc.*, the Minnesota Supreme Court followed the United States Supreme Court's approach and adopted the rule that forum-selection clauses are "not per se invalid, but enforceable in the discretion of the court if not unreasonable." 320 N.W.2d 886, 888-90 (Minn. 1982). The supreme court held that "when the parties to a contract agree that actions arising from that contract will be brought in a particular forum, that agreement should be given effect unless it is shown by the party seeking to avoid the agreement that to do so would be unfair or unreasonable." *Id*. at 890. The relevant issue is "whether a court should refrain from exercising the jurisdiction that it admittedly possesses to give effect to the parties' intentions as expressed in a forum selection clause." *Id*. at 889.

The supreme court explained that this approach "accords with ancient concepts of freedom of contract and reflects an appreciation of the expanding horizons of American business"; it also provides "a degree of certainty to business contracts by obviating

8

jurisdictional struggles and by allowing parties to tailor the dispute resolution mechanism to their particular situation." *Id.* (quotation omitted).

A forum-selection clause is unreasonable, and therefore unenforceable, if "(1) the chosen forum is a seriously inconvenient place for trial; (2) the choice of forum agreement is one of adhesion; and (3) the agreement is otherwise unreasonable." *Id.* at 890. A forum-selection clause is otherwise unreasonable if "enforcement of the forum selection clause 'would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision.'" *Id.* at 891 (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15, 92 S. Ct. 1907, 1916 (1972)).

The district court determined that New York is not a seriously inconvenient place for trial and that fact issues preclude a determination regarding whether the parties' forum-selection agreement is one of adhesion. But the district court refused to enforce the forum-selection clause based on Minnesota's strong public policy against champerty.

Minnesota follows the common-law rule prohibiting contracts for champerty. *Huber v. Johnson*, 68 Minn. 74, 77-78, 70 N.W. 806, 807 (1897). This court has defined champerty as "'[a]n agreement between a stranger to a lawsuit and a litigant by which the stranger pursues the litigant['s] claims as consideration for receiving part of any judgment proceeds.'" *Johnson v. Wright*, 682 N.W.2d 671, 675 (Minn. App. 2004) (first alteration in original) (quoting *Black's Law Dictionary* 224 (7th ed. 1999)), *review granted* (Minn. Oct. 19, 2004) *and appeal dismissed* (Minn. Jan. 10, 2005). This court has defined maintenance, a similar concept, as "'[a]ssistance in prosecuting or defending a lawsuit given to a litigant by someone who has no bona fide interest in the case; meddling in

9

someone else's litigation.'" *Id.* (alteration in original) (quoting *Black's Law Dictionary* 965 (7th ed. 1999)).

"The general purpose of the law against champerty and maintenance" is to "prevent officious intermeddlers from stirring up strife and contention by vexatious or speculative litigation which would disturb the peace of society, lead to corrupt practices, and pervert the remedial process of the law." *Huber*, 68 Minn. at 78, 70 N.W. at 807. In other words, the prohibition on champerty and maintenance is aimed at discouraging "intrusion for the purpose of mere speculation in the troubles of others." *Hackett v. Hammel*, 185 Minn. 387, 388, 241 N.W. 68, 69 (1932). In *Johnson*, this court was asked to re-evaluate Minnesota's position against champerty and maintenance. 682 N.W.2d at 679. We recognized that a few states have abandoned or modified the champerty doctrine, but we refused to do so, noting "the potential ill effects that a champertous agreement can have on the legal system." *Id*. at 679-80.

The district court reasoned that the agreement in this case could implicate the concerns underlying Minnesota's prohibition on champerty as follows: "a litigant with no obligation to pay advances back has no incentive to settle, unless the amount recovered would exceed her attorney's fees plus the amount she would owe to the litigation funding company" and the "rapid escalation of amounts owed to the litigation funding company would lead to an equally rapid decline in the litigant's willingness to consider settling for anything less than a maximum recovery." The district court further reasoned that "[t]he outcome of the dispute between the parties in this case will be felt within this State, and not anywhere in New York." The district court concluded that upholding the forum-

10

selection clause "would result in the contravention of a strong Minnesota public policy that its courts should decide whether champertous agreements may be enforced within this state."

Prospect argues that the district court abused its discretion primarily because "[t]here is no case law outlining such a public policy in Minnesota, nor did the district court rely on any in making this pronouncement." Prospect further argues that "the types of public policy in which courts have found forum[-]selection clauses to be unreasonable have been limited to claims of" judicial economy and the prevention of multiple actions on similar issues. *See Interfund Corp. v. O'Byrne*, 462 N.W.2d 86, 89 (Minn. App. 1990) ("Judicial economy and the prevention of multiple actions on similar issues are policies which can render a forum[-]selection clause patently unreasonable.").

Whether the district court's reasoning is a valid basis to refuse to enforce the parties' forum-selection clause is an issue of first impression. Minnesota caselaw does not expressly endorse the reasoning. However, in adopting the current rule on forum-selection clauses in *Hauenstein,* the Minnesota Supreme Court did not suggest that the "otherwise unreasonable" category of forum-selection clauses is as narrow as Prospect contends. In setting forth three ways that forum-selection clauses may be unreasonable, the Minnesota Supreme Court said, "[o]ther indications of unreasonableness in forum selection agreements are sure to arise where for reasons other than those enumerated above, to enforce the agreement would be unfair or unreasonable." *Hauenstein*, 320 N.W.2d at 891. The supreme court provided the following example from *M/S Bremen v. Zapata Off-Shore Co*: where enforcement "'would contravene a strong public policy of the forum in which

11

suit is brought, whether declared by statute or by judicial decision.'" *Id*. (quoting *Bremen*,

407 U.S. at 15, 92 S. Ct. at 1916).

*Bremen* involved a forum-selection clause that designated the London Court of

Justice as the forum for any disputes arising under an international-towage contract. 407

U.S. at 2, 92 S. Ct. at 1909. The Supreme Court considered whether enforcement of the

forum-selection clause would contravene the public policy established in *Bisso v. Inland*

*Waterways Corp.*, 349 U.S. 85, 75 S. Ct. 629 (1955). *Id.* at 15, 92 S. Ct. at 1916. *Bisso*

established a "judicial rule, based on public policy, invalidating contracts releasing towers

from all liability for their negligence." 349 U.S. at 90, 75 S. Ct. at 632.

*Bremen* rejected the *Bisso* public-policy argument against enforcement of the

forum-selection clause. 407 U.S. at 15-16, 92 S. Ct. at 1916. However, it did so solely

because the *Bisso* policy was inapplicable to the facts in *Bremen*. The Supreme Court

explained that, "whatever the proper scope of the policy expressed in *Bisso*, it does not

reach this case. *Bisso* rested on considerations with respect to the towage business strictly

in American waters, and those considerations are not controlling in an international

commercial agreement." *Id*. (footnote omitted). Moreover, the Supreme Court went on to

explain:

> [The] selection of a remote forum to apply differing foreign
> law to an essentially American controversy might contravene
> an important public policy of the forum. For example, so long
> as *Bisso* governs American courts with respect to the towage
> business in American waters, it would quite arguably be
> improper to permit an American tower to avoid that policy by
> providing a foreign forum for resolution of his disputes with an
> American towee.

*Id*. at 17, 92 S. Ct. at 1917.

The preceding example suggests that use of a forum-selection clause to avoid a forum's established substantive policy may render the clause unreasonable. Such is likely the case here. It appears that the forum-selection clause in this case, in conjunction with the choice-of-law provision, is an attempt to avoid Minnesota's long-established policy that agreements for champerty are unenforceable. The district court recognized that reality in declining to enforce the forum-selection clause. The district court's reasoning finds support in *Bremen* and *Hauenstein*.

We now turn to a case that is factually similar to the case before us: *Fountain v. Oasis Legal Fin., LLC*, 86 F. Supp. 3d 1037 (D. Minn. 2015).[5] In *Fountain*, consumers brought a putative class action in Minnesota state court against Oasis, alleging that Oasis was an Illinois company that purchased legal-funding interests through purchase agreements with Minnesota consumers who had personal-injury lawsuits pending in state or federal court. 86 F. Supp. 3d at 1040-41. The consumers further alleged that the purchase agreements constituted champerty and sought a declaration that the agreements violated Minnesota public policy and were void and unenforceable. *Id*. at 1041. Oasis removed the case to federal court and moved to dismiss based on a forum-selection clause in the purchase agreements requiring any lawsuit stemming from the agreements to be

---

[5] Although the case is not precedential, it is persuasive. *See Sonenstahl v. L.E.L.S., Inc.*, 372 N.W.2d 1, 4 (Minn. App. 1985) (noting that federal decisions may be persuasive where Minnesota courts have not addressed a subject).

brought in state court in Cook County, Illinois. *Id*. at 1040-41. The agreements also contained a choice-of-law provision selecting Minnesota law. *Id.* at 1040.

In determining whether to enforce the forum-selection clause, the *Fountain* court noted that the Supreme Court had recently addressed the proper procedure for enforcing a forum-selection clause in *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 134 S. Ct. 568 (2013). *Id.* at 1043. The *Fountain* court noted that in *Atl. Marine*, the Supreme Court affirmatively endorsed the forum non conveniens doctrine as a vehicle to enforce a forum-selection clause that chooses a nonfederal forum and therefore applied that doctrine. *Id*. at 1044.[6]

The *Fountain* court first considered whether the forum-selection clause was enforceable and concluded that it was. *Id*. at 1044-45. The federal court rejected the consumers' argument that enforcing the forum-selection clause would contravene Minnesota's public policy against champerty. *Id*. at 1044. The federal court reasoned that "what matters is not whether the contract as a whole violates public policy, but whether the forum-selection clause itself violates public policy. Courts in this District have repeatedly held that enforcement of a forum-selection clause does not violate Minnesota public policy." *Id*.[7] Given the Minnesota Supreme Court's recognition that "[o]ther indications

---

[6] Because the issue is not briefed in this appeal, we do not consider whether Minnesota should follow the federal approach in *Atl. Marine*.

[7] The Supreme Court of Alabama recently cited this text from *Fountain* and concluded that in *Bremen*, "the [Supreme] Court was saying that enforcement of *the forum-selection clause* must contravene a state's public policy, not that the clause should be held unenforceable if enforcement of *the contract* that contains the clause would contravene a state's public policy." *Ex parte PT Sols. Holdings, LLC*, No. 1150687, 2016 WL 6900685, at *5 (Ala. Nov. 23, 2016).

14

of unreasonableness in forum[-]selection agreements are sure to arise," *Hauenstein*, 320 N.W.2d at 891, and the United States Supreme Court's recognition that "it would quite arguably be improper" to permit a party to use a forum-selection clause to avoid a forum's judicial policy, *Bremen*, 407 U.S. at 17, 92 S. Ct. at 1917, we disagree with the federal court's conclusion that the only relevant public policy is the forum's policy regarding forum-selection clauses.

After concluding that the forum-selection clause was enforceable, the *Fountain* court next considered whether it should be enforced, using a modified forum non conveniens analysis set forth in *Atl. Marine*. *Id*. at 1046. In conducting that analysis, "the plaintiff's choice of forum merits no weight" and the court "should not consider arguments about the parties' private interests." *Atl. Marine*, 134 S. Ct. at 581-82. The court may consider only public-interest factors, which "may include 'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law.'" *Id*. at 581 & n.6 (alteration in original) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6, 102 S. Ct. 252, 258 n.6 (1981)).

The parties in *Fountain* framed the relevant public-interest factor as follows: "whether a Court in Minnesota has a localized interest in applying Minnesota's prohibition against champerty to the purchase agreements at issue here." 86 F. Supp. 3d at 1046. The consumers "contend[ed] that approximately 2,000 consumers in the putative class are located in Minnesota and deserve[d] a chance to vindicate their rights in Minnesota based on Minnesota law." *Id*. Oasis countered that "the purchase agreements contain[ed] a

15

choice-of-law provision that require[ed] the application of Minnesota law and its strong interest in prohibiting champerty, regardless of which court decide[d] the case." *Id*.

The *Fountain* court concluded that the local public-interest factor did not weigh against enforcing the forum-selection clause, given the parties' choice of Minnesota law. *Id*. The federal court reasoned that "[i]n the end, it [was] likely that an Illinois court applying Illinois choice-of-law principles would enforce the choice-of-law provision and analyze [the] claims under Minnesota law" and that "[e]nforcement of the forum-selection clause would therefore not thwart Minnesota public policy against champerty, diminishing any benefit to the public in keeping this case in this District." *Id*.

The parties' framing of the public-interest factor in *Fountain* is similar to the district court's reasoning here: Minnesota has a local interest in deciding whether the parties' agreement is void under Minnesota's policy against champerty. But unlike the circumstances in *Fountain*, the choice-of-law provision in this case does not select Minnesota law; it requires application of New York law. Although a New York statute prohibits champerty, its prohibition is narrower than Minnesota's common-law approach. *See* N.Y. Jud. Law § 489 (McKinney 2016) (providing that no corporation or association "shall solicit, buy or take an assignment of, or be in any manner interested in buying or taking an assignment of a bond, promissory note, bill of exchange, book debt, or other thing in action, or any claim or demand, with the intent and for the purpose of bringing an action or proceeding thereon"); Maya Steinitz, *Whose Claim is this Anyway? Third-Party Litigation Funding*, 95 Minn. L. Rev. 1268, 1289-90 (2011) (noting that Minnesota represents those states that continue to "rigorously apply" champerty restrictions, whereas

16

New York represents those states that, while not abandoning the champerty doctrine, "have taken a cautious approach to its application").

Prospect notes that "both lower courts have declined to determine choice of law at this time" and that Maslowski has the right to "argue for the application of Minnesota law in [the New York] forum." Prospect argues that the "record does not contain any evidence that the New York court will improperly interpret Minnesota law should it determine that Minnesota law applies, nor is it appropriate for the Minnesota court to make any such assumption." However, Prospect also argues, "When read together, the choice of law clause and the choice of forum clause make clear that respondent agreed to submit to the New York courts *and New York Law*." Given the choice-of-law provision in this case—and Prospect's intent to enforce it—enforcement of the forum-selection clause could be the first step in thwarting Minnesota's policy against champerty. Unlike the circumstances in *Fountain*, there is, therefore, a benefit to the public in keeping this case in Minnesota.

We recognize that the current rule favors enforcement of forum-selection clauses and that there are important reasons to honor such agreements. *See Hauenstein*, 320 N.W.2d at 889. But in this particular case, the decision whether the parties' agreement violates Minnesota's policy against champerty has the potential to expose personal-injury actions in Minnesota to the negative effects of champerty. Given that potential, Minnesota has a strong local interest in applying its prohibition against champerty in this case.

In sum, the district court did not abuse its discretion by refusing to enforce the forum-selection clause in the parties' agreement based on Minnesota's local interest against champerty. The district court's decision finds support in United States Supreme Court and

17

Minnesota Supreme Court precedent. We therefore affirm the district court's refusal to enforce the forum-selection clause.

**II.**

Prospect contends that the district court abused its discretion by enjoining it from prosecuting its New York action. "It has long been the law in Minnesota that a court may enjoin a party over whom it has in personam jurisdiction from pursuing similar litigation in another court." *First State Ins. Co. v. Minn. Mining & Mfg. Co.*, 535 N.W.2d 684, 687 (Minn. App. 1995), *review denied* (Minn. Oct. 13, 1995); *see Hawkins v. Ireland*, 64 Minn. 339, 344, 67 N.W. 73, 75 (1896) (stating that Minnesota courts may restrain its citizens from pursuing actions in other state courts "whenever the facts of the case make such restraint necessary to enable the court to do justice, and prevent one citizen from obtaining an inequitable advantage over other citizens"); *Freick v. Hinkly*, 122 Minn. 24, 26, 141 N.W. 1096, 1096 (1913).

Historically, Minnesota courts considered principles of comity and equity when determining whether to issue an anti-suit injunction. *See, e.g.*, *Doerr v. Warner*, 247 Minn. 98, 109-10, 76 N.W.2d 505, 514 (1956) (upholding anti-suit injunction partly because trustee acted in "calculated and systematic" manner to deprive Minnesota court of jurisdiction and because Minnesota court was first to acquire jurisdiction). Currently, this court applies a three-part substantial-similarity test that assesses (1) the similarity of the parties; (2) the similarity of the issues; and (3) the capacity of one action to dispose of the action to be enjoined. *First State*, 535 N.W.2d at 687. The decision whether to grant such

18

an injunction is left to the district court's discretion and will be upheld absent a clear abuse of that discretion. *Id.*

The district court concluded that the New York and Minnesota actions involve similar parties. Prospect concedes that this part of the test is satisfied. As to the similarity of the issues, the district court acknowledged that Prospect made additional claims against Maslowski in the New York action that are not included in the Minnesota action. Despite these additional claims, the district court determined that because the "'paramount and threshold' issue in both actions is the enforceability of the subject agreement" and Prospect can raise all of its claims against Maslowski in Minnesota in subsequent pleadings, the issues in both cases are substantially similar. Based on the similar parties and the paramount and threshold enforceability issue, the district court concluded that resolution of this action would dispose of the New York action and that "an injunction is necessary to protect the jurisdiction of the Minnesota courts to decide whether agreements like the subject agreement are champertous and unenforceable in Minnesota."

Prospect argues that the district court erred by finding that the two actions involve similar issues because the "claims in the New York Action are distinct, and include not only additional contract claims, but quasi contract claims and tort claims." This court has previously upheld a district court's finding of an identity of issues where two actions shared a "'paramount and threshold' issue of insurance coverage" and additional tort claims "stem[med] from the central contract action and could still be raised in Minnesota in subsequent pleadings." *Id.* at 687, 689. Because the paramount and threshold issue in both

19

actions here is the enforceability of the funding agreement, the district court did not err by determining that the two actions involve similar issues.

Prospect further argues that because "there are many additional elements raised in the New York Action which have no bearing on the Minnesota Action," resolution of the Minnesota action would not dispose of the New York action. But all of Prospect's New York claims are directly related to enforceability of the funding agreement. And, as the district court noted, Prospect can raise claims related to that central issue in subsequent pleadings in the Minnesota action. The district court therefore did not err by concluding that the third part of the substantial-similarity test is satisfied.

In addition to arguing that the district court erred in its application of the substantial-similarity test, Prospect argues that "[c]omity and equity support deference to the New York court, and the district court abused its discretion by refusing to defer to the first-filed action." As to comity, Prospect relies on the "first-filed rule," which provides:

> Where two actions between the same parties, on the same subject, and to test the same rights, are brought in different courts having concurrent jurisdiction, the court which first acquires jurisdiction, its power being adequate to the administration of complete justice, retains its jurisdiction and may dispose of the whole controversy, and no court of coordinate power is at liberty to interfere with its action. This rule rests upon comity and the necessity of avoiding conflict in the execution of judgments by independent courts . . . .

*State ex rel. Minn. Nat'l Bank of Duluth v. Dist. Ct.*, 195 Minn. 169, 173, 262 N.W. 155, 157 (1935) (quotation omitted).

However, this general rule does not apply when the same cause of action is pending before courts which do not share concurrent jurisdiction, such as courts of different states.

*St. Paul Surplus Lines Ins. Co. v. Mentor Corp.*, 503 N.W.2d 511, 515 (Minn. App. 1993). In such circumstances, the actions may proceed independently of each other and the rules of res judicata will generally be applied with regard to the first suit to be concluded. *Id.* Because the Minnesota and New York courts do not have concurrent jurisdiction, the district court did not abuse its discretion by refusing to defer to the New York action under the first-filed rule.

As to comity and equity in general, the district court noted that it fundamentally disagrees with the New York Supreme Court regarding the enforceability of the forum-selection clause.[8] The district court also noted that Maslowski is a Minnesota resident, the underlying personal-injury claim arose in Minnesota and is venued in a Minnesota court, the case "raises significant issues regarding whether Minnesota's long-standing prohibition against champerty and maintenance is violated by the terms of the subject agreement," and, if the funding agreement is champertous and enforced by a New York court, the effects of its enforcement will be felt within Minnesota's legal system. The district court explained:

> Enforcement of this agreement by a non-Minnesota court would encourage [Prospect] and other companies that sell pre-settlement funding products to take pains to avoid any possibility of review by Minnesota courts, while continuing to sell such products in Minnesota, thus depriving the Minnesota courts of their authority to determine what constitutes champerty for purposes of such agreements as they affect Minnesota lawsuits.

---

[8] As we noted above, the New York Supreme Court, Appellate Division, reversed the New York Supreme Court's ruling that the forum-selection clause is enforceable.

21

When weighing the equities, the district court found that Prospect "acted 'in a calculated and systematic manner' to deprive the Minnesota courts of their jurisdiction to determine whether pre-settlement funding contracts affecting Minnesota lawsuits are champertous."

Prospect assigns error to the district court's findings regarding its actions and motivation. However, Prospect cannot dispute—and indeed argues—that the purpose of its forum-selection clause and choice-of-law provision is to ensure application of New York law instead of Minnesota law. One of Minnesota's earliest cases regarding anti-suit injunctions states:

> [T]o justify enjoining the prosecution of a foreign suit begun before any proceedings were taken in the home courts, it must appear that the foreign suit will result in *evading the effect of some local law*, or in securing some other inequitable advantage, or in imposing some inequitable disadvantage.

*Freick*, 122 Minn. at 24, 141 N.W. at 1096 (emphasis added).

Because equity supports an anti-suit injunction when a party attempts to evade the effects of Minnesota law and Prospect admittedly attempts to avoid Minnesota's law against champerty, we need not determine whether the district court erred in finding that Prospect otherwise acted in bad faith. The district court's well-reasoned analysis assures us that the district court did not err in concluding that equitable principles favor maintaining the suit in Minnesota.

## DECISION

The district court did not abuse its discretion by refusing to enforce the forum-selection clause in the parties' agreement based on Minnesota's local interest against champerty. In addition, the district court properly applied the substantial-similarity test, as

22

well as principles of comity and equity, and did not abuse its discretion by issuing an anti-suit injunction enjoining Prospect from prosecuting its New York action against Maslowski.

**Affirmed.**